**John E. PASKERT**

v.

**The UNITED STATES.**

No. 489–88C.

United States Claims Court.

March 28, 1990.

Anthony C. Vance, Washington, D.C., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

YOCK, Judge.

This action arises from the involuntary release of the plaintiff, John E. Paskert, from active duty with the United States Army on September 1, 1987. The plaintiff now seeks back pay and allowances, reinstatement to active duty, correction of his military service records, and placement on an appropriate promotion list. The matter

is currently before the Court on the parties' cross-motions for summary judgment.

For the reasons discussed herein, the defendant's motion for summary judgment is granted, the plaintiff's cross-motion for summary judgment is denied, and the plaintiff's complaint is to be dismissed.

### Factual Background

The plaintiff, John E. Paskert, served on active duty as an officer in the United States Army for approximately 11 years, beginning on August 20, 1976, and ending with his involuntary release on September 1, 1987. During this time, he rose through the ranks, receiving promotions to the grades of first lieutenant and captain in due course. Plaintiff was then considered for promotion to the grade of major by the Fiscal Year 1986 Majors' Selection Board, convened on April 11, 1986; however, he was not selected by that board for promotion. Plaintiff was again considered for promotion to the grade of major by the Fiscal Year 1987 Majors' Selection Board, which convened on December 18, 1986, and, for a second time, he was not selected. As a result of plaintiff's being passed over twice for promotion to major, he was involuntarily discharged from the Army on September 1, 1987, as required by 10 U.S.C. § 632(a) (1988).[1]

On or about January 1, 1987, shortly after his second nonselection for promotion, but while he was still on active duty, the plaintiff decided to appeal one of his Officer Efficiency Reports (OER), which he believed had been the cause of his nonselections for promotion. The OER at issue rated his military performance between July 16, 1984, and April 11, 1985. In that OER, his rater had downgraded the plaintiff's numerical scores (from a one to a two on a scale of five) in two categories (displays sound judgment and seeks self-improvement) out of fourteen and included appropriate explanatory notes. In addition, the senior rater had marked the plaintiff into the third category from the top and

---

1. Title 10 U.S.C. § 632(a) mandates the discharge of officers who have twice failed of selection for promotion to the next higher grade.

explained his reasons therefor in the comment section. This appeal was directed at and processed by the Officer Special Review Board (OSRB), according to the provisions of the Department of the Army, Regulation Number 623–105, Officer Evaluation Reporting System (hereafter AR 623–105). Chapter 9, entitled Appeals, states at paragraph 9–1.*a.*:

> Officer evaluation reports (DA Form 67 series) and academic evaluation reports (DA Forms 1059 series) may have administrative errors or may not accurately record the officer's potential or the manner in which he or she performed his or her duties. The appeals system protects the Army's interests and insures fairness to the officer. At the same time, it avoids impugning the integrity or judgment of the rating officials without sufficient cause. This chapter sets forth policies and procedures for the appeals system.

Further, in paragraph 9–1.*i.* the regulation announces that:

> Appeals alleging bias, prejudice, inaccurate or unjust ratings or any matter other than administrative error are substantive in nature and will be adjudicated by the DCSPER Officer Special Review Board (OSRB) (para 9–8). * * * These are generally claims of an inaccurate or an unjust evaluation of performance or potential or claims of bias on the part of the rating officials.

Finally, in paragraph 9–8.b. of Chapter 9, entitled OSRB composition and procedures, it is concluded that:

> Board proceedings are administrative and nonadversary; the provisions of AR 15–6 do not apply. Although not bound by the rules of evidence for trials by court-martial or other court proceedings, the board does keep within the reasonable bounds of evidence that is competent, material, and relevant. The appellant or his or her agent are not authorized to appear before the board. However, the board may obtain more infor-

mation from the appellant, the rating officials, persons in the chain of command, or anyone thought to have firsthand knowledge of the case. The appellant will generally be contacted by official correspondence if deemed necessary. Normally, the board will not contact those who provided a third party statement of support unless there is a need for clarification.

In his appeal, the plaintiff alleged a substantive inaccuracy in his OER because he believed his supervisor/rater was biased against him.[2] The plaintiff believed that his rater had developed a bias against him because of two factors. First, the plaintiff argued that his rater unnecessarily and obsessively insisted that the plaintiff take an Instructor Training Course (ITC) even though the plaintiff was primarily an administrator and not a full-time instructor at his Fort Sill, Oklahoma Field Artillery School command, and notwithstanding that he already had received a degree in education and was due to rotate Army assignments at the end of June 1985. The plaintiff was registered for a two-week ITC course to begin April 22, 1985, at the direction of his supervisor/rater. He appeared for the courses, but was then asked to step aside by the course instructor to allow space for other and newer instructors to be trained. Although he willingly did so, the plaintiff believed this prejudiced him with his supervisor/rater. His supervisor/rater had attempted to enroll the plaintiff in several prior ITC classes, all to no avail.

The second factor had to do with the plaintiff's request to take extended personal leave to assist his aged mother. His mother was scheduled for a hip replacement operation and needed the plaintiff there to assist her following the operation. After initially refusing to allow the personal leave, the plaintiff's rater was ordered by his superiors to approve the leave which, according to the plaintiff, further

---

**2.** In addition, the plaintiff alleged an administrative error in that the first two months of the rated period should actually have been rated by another individual as his immediate supervisor.

The OSRB did correct the administrative error for the plaintiff, but gave no other substantive relief to the plaintiff.

prejudiced the rater against him, resulting in the inaccurate and unjust OER.

After reviewing the plaintiff's evidence submitted with his appeal and telephonically discussing the matter with the plaintiff's supervisor/rater and senior rater, the OSRB determined on February 12, 1987, that no relief was warranted on the substantive issue alleging bias. When contacted by the OSRB, the supervisor/rater stated that he had no personality conflict with the plaintiff and that he did not intend for his rating to deny the plaintiff a promotion or cause him to leave the service. He insisted, however, that the OER was an accurate appraisal of the plaintiff's performance during the rating period. Also, the senior rater, when contacted by the OSRB, said that the contested OER was a fair and objective assessment of the plaintiff's performance and potential and that there was no personal bias on his part or on the part of the supervisor/rater toward the plaintiff. In its concluding discussion in the plaintiff's initial Case Summary, the OSRB stated:

> The appellant's contention that the contested OER is substantively inaccurate is found to be without merit. Based on the evidence submitted, including information developed by the OSRB through discussion with the rating officials, it is the opinion of the Board that the appellant has provided insufficient evidence to prove that the contested report was not an accurate, fair, and objective assessment of his performance and potential at the time it was prepared. The third party statements, while supportive of the appellant, do not provide relevant information to refute the contested OER. The authors were not knowledgeable of the expectations, guidance, and demands placed on the appellant by the rating officials. The USAFAS had a requirement for instructors and Branch Chiefs to attend the Instructor Training Course. The appellant was told to go. He did not. The rating officials strongly supported their positions in discussions with the OSRB and stated that there was no bias or personality conflict. There is insufficient evidence to warrant invalida-

tion of the contested OER. As indicated in para 9–7, AR 623–105, the burden of proof rests with the appellant to provide relevant material to clearly and convincingly establish that a contested OER is not an accurate assessment of his performance. In this case, the appellant has not done this.

CONCLUSIONS:

The appellant has not provided sufficient clear and convincing evidence to prove his contention that the contested OER should be invalidated. No relief is warranted.

On August 25, 1987, six months after his original appeal to the OSRB was denied, the plaintiff filed an Application for Correction of Military Record with the Army Board for Correction of Military Records (ABCMR or Board). In this application, the plaintiff requested the correction or removal of his OER in issue, promotion to major effective January 1988, and pay and allowances accrued as a major effective January 1988. He also noted that he was scheduled for involuntary separation on September 1, 1987, and requested expedited treatment of his ABCMR appeal. He further requested the opportunity to reply to any Army staff advisory opinion that the Board might receive prior to deciding his case.

In support of his ABCMR application, the plaintiff enclosed a brief in argument, executed by counsel on his behalf, and documentation primarily in the form of supporting statements from personnel who had close contact with the plaintiff during the rating period at issue. Included within the supporting statements were five laudatory statements from Army officers that indicated they had either heard that there was a personality conflict between the plaintiff and his supervisor/rater or that it was their opinion that there was a personality conflict between them. Several civilian instructors and other enlisted personnel were lavish in their praise of the plaintiff as a good leader, outstanding instructor, and acknowledged computer expert who had good potential in the Army. Many of these individuals indicated in their statements that

had they been the plaintiff's rater, they would have given him top ratings. Most indicated that they thought the plaintiff should have been promoted. A letter from the plaintiff's senior rater, dated May 1, 1987, was also included in the ABCMR application, which discussed the plaintiff's disenrollment from the ITC in April 1985, and his request for extended personal leave. The letter concluded with the statement that, in his opinion, the plaintiff should have been promoted to major and retained as an Army officer.

Upon receipt of the plaintiff's application and supporting documents, the ABCMR referred the plaintiff's application back to the OSRB for reconsideration and an advisory opinion since this application included several new statements, including the senior rater's statement, that had not been included earlier and therefore not considered by the OSRB.[3]

As a part of its reconsideration process, the OSRB again contacted the senior rater in order to clarify his position regarding the OER at issue. In its advisory opinion to the ABCMR dated October 28, 1987, the OSRB stated:

> The SR asserts in his statement that the applicant should be promoted and retained; but, in a second telephonic interview, with the OSRB, reaffirmed his conviction that the contested OER was and remains a fair, accurate, and objective evaluation of the applicant's performance during the rated period.

Further, in its Addendum to its initial Case Summary, the OSRB commented on its telephonic interview with the senior rater:

> (1) The SR reaffirmed the content of his supporting statement, but added that neither the ITC issue nor the leave incident was a fator [sic] in his evaluation of the appellant. He said that the ITC issue was probably a factorin [sic] the rater's assessment. But, then, the rater had tried over a long period of time to get the applicant to comply with the re-

quirement to take the course. He would understandably be perturbed at the applicant's continued maneuvers to avoid doing it. The SR explained that the awarding of the ASI 5K happened because of a fault in the system. The applicant still did not qualify for a waiver of the ITC requirement.

> (2) The SR reiterated his opinion that the applicant should be promoted to Major and retained. However, he also reaffirmed the validity of the contested report, reiterating the rationale and examples he had provided the Board during adjudication of the initial appeal. He stated firmly that he considered that both his and the rater's assessments were fair, accurate, and objective evaluations of the applicant's performance during the contested report period.

After a review of all of the evidence submitted, including the senior rater's telephonic comments indicated above, it was the OSRB's view that the plaintiff's ABCMR application should be denied since he had failed to substantiate his contention of substantive inaccuracy in the OER. The plaintiff was given the opportunity to respond to the OSRB advisory opinion.

The ABCMR, after reviewing all of the evidence on record, including the OSRB advisory opinion, determined that the plaintiff failed to submit sufficiently relevant evidence to demonstrate the existence of material error or injustice, and thus denied the plaintiff's application by Memorandum of Consideration dated April 27, 1988. The memorandum stated:

> 2. Regarding the issue of substantive inaccuracy of the contested OER, the Board is not convinced that the allegation of a personality conflict caused an inaccurate evaluation. In discussions with the OSRB, the rating officials provided convincing rationale for rating the applicant as they did. The supporting statement by the senior rater is a case of retrospective thinking motivated by the knowledge of the applicant's nonselection

---

**3.** Department of the Army Memorandum 600–1, Evaluation Report Appeals, (18 January 1985), provides additional procedures for the review

and evaluation of substantive appeals by the OSRB.

for promotion to major. We noted that when the OSRB contacted the senior rater he affirmed the validity of the contested OER. Therefore, despite the evidence submitted in support of the application, the contested report represents a fair, objective and valid appraisal of his demonstrated performance and potential during the period in question. Therefore, there is no basis for removing it from his OMPF.

The plaintiff now seeks monetary and other relief from this Court.

*Discussion*

It has often been stated that this Court is bound to uphold the decisions of the military correction boards unless the plaintiff clearly demonstrates that they were arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Braddock v. United States*, 9 Cl.Ct. 463, 472 (1986).

In *Sanders v. United States*, our predecessor court, the United States Court of Claims, rearticulated the standard of review of military correction board decisions:

Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979). *See also Skinner v. United States*, 219 Ct.Cl. 322, 330–32, 594 F.2d 824, 829–30 (1979); *Boyd v. United States*, 207 Ct.Cl. 1, 8–9 (1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Cooper v. United States*, 203 Ct.Cl. 300, 304 (1973); *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973).

■ A claimant is required to overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813, *cited with approval in Grieg v. United States*, 226 Ct.Cl. 258, 266–67, 640 F.2d 1261, 1266–67 (1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). *See also Hoffman v. United States*, 894 F.2d 380, 385 (Fed.Cir. 1990), *aff'g* 16 Cl.Ct. 406 (1989). This presumption, of course, includes those officers who are charged with rating the performance of other officers. *Guy v. United States*, 221 Ct.Cl. 427, 432–33, 608 F.2d 867, 870–71 (1979). *See also Sanders*, 219 Ct.Cl. at 303, 594 F.2d at 814; *Boyd*, 207 Ct.Cl. at 9. "Perfect objectivity in the rating process cannot be expected or even hoped for". *Guy*, 221 Ct.Cl. at 433, 608 F.2d at 870–71.

■ In the face of this presumption, the plaintiff must do more than merely allege that an OER seems inaccurate, incomplete, or subjective in some sense in order to invoke court intervention. Even if such an allegation is proven, it is insufficient if it fails to establish the presence of "factors adversely affecting the ratings which had *no business being in the rating process*," *id.* (emphasis in original), or if there is no clear violation of a specific objective requirement of statute or regulation, or if there is no misstatement of a significant hard fact. *Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 708 (1980).

■ A promotion selection board is required to consider a military officer's service record on a fair and equitable basis. *See Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 814; *King v. United States*, 19 Cl.Ct. 703, 705 (Cl.Ct.1990). Secretaries of the military, acting through correction boards such as the ABCMR, may correct an error or remove an injustice to ensure that a serviceman's record accurately portrays his military career. 10 U.S.C. § 1552(a) (1988); *Murphy v. United States*, 16 Cl.Ct. 385, 392 (1989). A correction board acts in violation of this mandate, and thus arbitrarily and capriciously, if it does not correct an injustice that is clearly and convincingly presented in the record. *See Sanders*, 219 Ct.Cl. at 301–03, 594 F.2d at 813–14; *Shar-*

*adowski v. United States,* 200 Ct.Cl. 488, 489, 471 F.2d 627, 628 (1973); *Duhon v. United States,* 198 Ct.Cl. 564, 570, 461 F.2d 1278, 1281 (1972); *King,* 19 Cl.Ct. at 705.

With these standards and presumptions in mind, the Court can now turn to the contentions in this case.

The plaintiff's position is that he was unjustly rated in the OER at issue, which rating caused his nonselection for major and his eventual involuntary release from active military duty. In his cross-motion for summary judgment, the plaintiff challenges the Board's decision as being arbitrary and capricious, not supported by substantial evidence, and in violation of law. Specifically, he presents four basic arguments. First, he argues that the Board did not give fair and adequate consideration to the evidence that he presented. Second, he contends that the Board gave undue weight to the discussions held between the OSRB and his supervisor/rater and senior rater. Third, he argues that the Army regulations pertaining to the Board and OSRB procedures are invalid because they allow for *ex parte* communications without the right of a due process hearing, thereby violating his Fifth Amendment due process rights, and that these regulations also violate the Administrative Procedures Act, 5 U.S.C. §§ 551–706 (1988) (APA). Fourth and finally, the plaintiff asserts that the Board applied an unlawful burden of proof to his claim, *i.e.,* instead of "clear and convincing" proof, the Board required "conclusive" proof.

In support of his contention that the Board did not fairly consider his evidence of personal bias on the part of his supervisor/rater as causing his unjust OER rating, which resulted in his nonselections, and eventual involuntary removal, the plaintiff places great weight on three arguments. To begin with, he complains that the Board rejected or gave only limited weight to the many statements (some 19) made by Army officers, enlisted men, and civilian employees on his behalf that commented on the plaintiff's abilities or attributes. At least five of the Army officers stated that they had either heard that there was a personality conflict between the plaintiff and his supervisor/rater or that they personally believed there was a personality conflict between the two.

Upon a careful review of the record, however, it appears that the Board and the OSRB spent considerable time assessing the various third-party statements and making their respective judgments. For instance, in the OSRB's advisory opinion to the Board, dated October 28, 1987, the OSRB stated:

The central issue raised by the applicant, and addressed by the Rating Officials during telephonic interviews with the OSRB, was the applicant's failure to comply with the requirement to attend a two-week Instructor Training Course (ITC), even though told to attend the course by his rater and required to do so by published policy. He persisted in avoiding it because he considered himself—by virtue of his BA degree in Physical Education—to be a qualified instructor, even though he did not meet any of the prescribed training and experiential criteria. The Rating Officials cited that issue as an example of his tendency to argue beyond the point of decision and resist mandates with which he didn't personally agree, and indicated it was not the issue but the motivation behind the applicant's action's [sic] that inspired the faulting comments in the contested OER. The applicant's evidence, while complimentary of him as a leader, instructor, and communicator from the viewpoint of several third-parties in the same department, failed to refute the rationale provided by the Rating Officials. The Rating Officials categorically denied the contention of personal bias; the applicant failed to prove it existed. In sum, it was the OSRB's opinion that the contested OER reflected the considered opinion and objective judgment of the Rating Officials at the time of preparation.

2. The OSRB has reviewed the applicant's current appeal of the same OER, and all documentation pertaining thereto, and remains firm in its opinion that alteration or invalidation of the contested report is not warranted. Although his new

evidence includes numerous statements by former colleagues, students, and instructors whom he supervised, all attesting to his having been a good leader, instructor, and communicator, the uniformity of their statements—in several cases exact duplication—indicates the applicant told them what he wanted them to say. Several disparage the rater, while praising the applicant; and opine there was a personality conflict that biased the rater. The key item of new evidence provided by the applicant is a statement from the SR, who in it states he accepted the applicant's explanation of the ITC issue, and of a second peripheral issue involving the applicant's request for a longer-than-usual PCS leave, which the applicant contended further biased the rater. The SR asserts in his statement that the applicant should be promoted and retained; but, in a second telephonic interview, with the OSRB, reaffirmed his conviction that the contested OER was and remains a fair, accurate, and objective evaluation of the applicant's performance during the rated period.

Further, in its Addendum to its initial Case Summary, the OSRB concluded:

Not including the updated doctor's statement, he has provided 19 third-party statements. Several members of the Department staff generally disparage the rater and his leadership, and describe the applicant as being a good leader, communicator, and instructor. Several say they feel or think that the rater was biased against the appellant, but none offers anything substantive by way of example or incident to support those views. All they put forward are hearsay and conjecture. Statements from 7 instructors who worked for the appellant are in several cases exactly the same and in others so similar that it is apparent that a suggested text was provided by the applicant. Three of five statements from former students, likewise, are text provided by the applicant; the two others are in the form of course critiques, in which the students praise the applicant as an instructor. The applicant also provides two supporting statements from general officers, though their support is for promotion and retention, not of his appeal per se. One is his current SR; the other was reviewer for a 1979 report period. The key item of new evidence offered by the applicant is a statement from the SR, who relates that he accepts the explanations offered by the applicant regarding his failure to take the ITC and for his insistence on an extended PCS leave. He, also, recommends that the applicant be promoted and retained. The board notes, however, that he does not suggest that the contested report is in any way inaccurate or unjust, or that he supports the applicant's efforts to have the report invalidated.

\* \* \* \* \* \*

4. After careful review of the arguments and evidence put forward by the applicant in this and in his initial appeal, the OSRB finds no basis for altering or invalidating the contested report. In spite of the applicant's insistence that the SR's misunderstanding regarding the reason for his request for an extended PCS leave was a factor in the SR's evaluation, the SR categorically denied that and provided clear and sound rationale for the rating he gave the applicant. Further, the several third parties who state they thought or believed that a personality conflict between the applicant and the rater caused the rater to be biased provide no cogent argument or evidence. They offer only unsupported personal opinion or conjecture. The Board noted the many third-party assertions that the applicant was a good leader, communicator and instructor as charted by the legal counsel in his brief. The Board also noted the applicant's claim in his personal statement that he was a qualified instructor, but when his own evidence refutes, in that—notwithstanding the administrative designation of ASI 5K—he did not meet the criteria established in the policy directive for waiver of the ITC requirement. However, whether he was an able instructor without having taken the course is not found to be the

relevant issue. His failure to comply with ITC requirement in spite of the directives to do so from his rater/supervisor is seen as being consistent with the SR's observation that the applicant was prone to argue beyond the point of decision, resisting those mandates with which he did not personally agree. None of the evidence provided by the applicant refutes the validity of that observation, which is cited by both rating officials as the basis for the faulting aspects of the contested OER.

CONCLUSION:

The OSRB reaffirms its initial determination that the applicant has failed to provide cogent evidence to substantiate his contention of substantive inaccuracy.

Finally, the Board determined in its Memorandum of Consideration dated April 27, 1988:

DISCUSSION: Considering all the evidence, allegations, and information presented by the applicant, together with the evidence of record, applicable law and regulations, and advisory opinion, it is concluded:

* * * * * *

2. Regarding the issue of substantive inaccuracy of the contested OER, the Board is not convinced that the allegation of a personality conflict caused an inaccurate evaluation. In discussing with the OSRB, the rating officials provided convincing rationale for rating the applicant as they did. The supporting statement by the senior rater is a case of retrospective thinking motivated by the knowledge of the applicant's nonselection for promotion to major. We noted that when the OSRB contacted the senior rater he reaffirmed the validity of the contested OER. Therefore, despite the evidence submitted in support of the application, the contested report represents a fair, objective and valid appraisal of his demonstrated performance and potential during the period in question. Therefore, there is no basis for removing it from his OMPF.

■ From a careful review of this record, the Court concludes that the Board

and the OSRB gave fair and adequate consideration to the plaintiff's third-party evidence. There is substantial evidence in the record to support the Board's conclusion that the plaintiff's third-party evidence simply did not overcome the presumption of regularity attached to the actions of the rating officials. *Guy*, 221 Ct.Cl. at 432–33, 608 F.2d at 870–71.

■ Next, the plaintiff contends that the Board did not adequately consider that his supervisor/rater downgraded his OER rating concerning a matter (the ITC course) over which he had no control. In this connection, the plaintiff claims that he could not attend the ITC courses because he was asked to withdraw so that others with lesser qualifications could attend. The plaintiff's argument is flawed, however, for two reasons.

First, the record does not support plaintiff's contention that he had no control over his ability to attend the ITC. As the defendant points out in its motion, the plaintiff, in his application to the ABCMR, initially wrote that he was "asked to withdraw by the instructor because he thought I did not need to attend." Plaintiff now claims that he was "requested to withdraw, through no fault of his, because of space limitations and a greater attendance need of others." Plaintiff also relied on two supporting statements (the Beauch and Watkins statements) to substantiate his claim that he had no control over his attendance at the ITC. In fact, plaintiff quotes from both of these in his cross-motion, yet leaves out what this Court believes is the more illuminating language contained in Course Instructor Robert Watkins' statement: "CPT PASKERT [plaintiff] did not attend our Instructor Training Course * * *. Rather, *he stood aside* to accomplish the most pressing demands of his department at the time." (Emphasis added.) While it appears that the plaintiff was requested by the course instructor to "stand aside," the orders from his supervisor requiring his attendance remained in effect. The plaintiff made a conscious decision to forego the training, contrary to his supervisor's express orders. Both his supervisor/rater and his senior

rater indicated to the OSRB that the plaintiff had managed, once again, to avoid going to the ITC. In view of the above, the OSRB's decision (and the Board's adoption of this view) not to credit the plaintiff's lack of control argument is supported by substantial evidence and is not arbitrary and capricious.

Second, even assuming for the sake of argument that the plaintiff actually had no control over his ITC attendance, this is not the critical issue. As the OSRB noted in its review of the plaintiff's appeal and which was confirmed through conversations with the supervisor/rater and senior rater, the plaintiff's failure to attend the ITC was "an example of his [plaintiff's] tendency to argue beyond the point of decision and resist mandates * * * and * * * it was not the issue [of not attending the ITC] but the motivation behind the applicant's action's [sic] that inspired the faulting comments in the contested OER." As so many case precedents have stated, the plaintiff must do more than allege that an OER seems inaccurate, incomplete, or subjective in some sense. *See Hary*, 223 Ct.Cl. at 17, 618 F.2d at 708; *Sanders*, 219 Ct.Cl. at 303–04, 594 F.2d at 814. Furthermore, the plaintiff has not proven that these factors, which he alleges adversely affected his rating, had no business being in the rating process, or that there was a clear violation of a specific objective requirement, or a misstatement of significant fact. The OSRB's conclusions in this regard are amply supported by substantial evidence in the record.

The plaintiff's third argument in support of his contention that the Board did not fairly consider his evidence on his rater's personal bias relates to the senior rater's actions in rating the plaintiff. Here, the plaintiff maintains that his supervisor/rater did not keep the senior rater appraised of his extended leave and departure plans, and as such, prejudiced the senior rater against the plaintiff. In support of this argument, plaintiff directs this Court to a supporting statement written by the senior rater for the plaintiff's benefit and originally submitted with the ABCMR application. In that statement, the senior rater advocat-

ed promotion of the plaintiff and his retention in the Army.

The OSRB contacted the senior rater, and while he reaffirmed the contents of the statement, he also stated that neither the ITC issue nor the leave issue affected his evaluation. In addition, the senior rater reaffirmed the validity of the OER and stated that he still considered it a fair, accurate, and objective evaluation of the plaintiff's actions during the rating period. The ABCMR, through incorporation of the OSRB opinion, found the supporting statement to be a case of "retrospective thinking motivated by the knowledge of the applicant's nonselection for promotion to major." The plaintiff contends that this finding by the ABCMR was in error.

 After-the-fact statements by raters contending that they scored the applicants too low on their OER's are not to be given great weight. *See Tanaka v. United States*, 210 Ct.Cl. 712, 713, 538 F.2d 348 (1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977), *cited with approval in Harris v. United States*, 14 Cl.Ct. 84, 91 (1987), *aff'd*, 861 F.2d 729 (Fed.Cir.1988). In *Tanaka*, our predecessor court found that minus any misstatements of fact in the contested OER, changed opinions of raters did not warrant voidance of the OER. In the case at bar, the senior rater, in his supporting statement, did not contest the validity of the OER; rather, he stated that *he* would promote the plaintiff based upon an "objective review of his performance data." Promotion, however, is not the issue. The issue is whether the senior rater gave the plaintiff an objective and accurate rating based on his actions and potential exhibited during the rating period. Whether the ABCMR acted arbitrarily and capriciously in its treatment of the senior rater's supporting statement is the pertinent question. Given the above stated reasoning, this Court believes the ABCMR's decision was supported by substantial evidence. As long as reasonable minds could reach differing conclusions from the evidence presented, this Court will not substitute its

judgment for the ABCMR's. *Harris*, 14 Cl.Ct. at 90; *Braddock*, 9 Cl.Ct. at 474–75.

In addition to the plaintiff's argument discussed above that the Board did not fairly consider his submitted evidence, he also asserts that the Board gave undue weight to the *ex parte* discussions held between the OSRB and his two raters. As will be discussed in more detail below, the plaintiff believes that the evidence from these two raters should have been presented in a due process hearing environment.

 In any event, the plaintiff's argument here is misplaced. Army regulations dealing with the OSRB clearly allow the OSRB to contact the appellant, rating officials, other persons in the chain of command, or anyone thought to have first-hand knowledge of the case. AR 623–105, ¶ 9–8.*b*. Also, Army regulations allow the ABCMR to request advisory opinions from staff and other officials. AR 15–185, ¶ 27.*b*. The system is intended to be an administrative one that is designed to protect the interests of the Army as well as ensure fairness to the officer, rather than being an adversarial system. AR 623–105, ¶ 9–1.*a*.

In this case, the OSRB did what the regulations directed it to do. That is, it reviewed the entire complaint file submitted by the plaintiff and discussed the issues with the two persons that were most knowledgeable and involved with the alleged problem.

The supervisor/rater's and senior rater's viewpoints were detailed in the OSRB Case Summaries. Those discussions and the entire case file, as submitted by the plaintiff, convinced the OSRB and the Board that the ratings, as made, were objective, accurate, and fair. The plaintiff's evidence, in short, did not clearly and convincingly demonstrate to the OSRB or the Board that the plaintiff should prevail. Both the OSRB and the Board found the explanations given by the supervisor/rater and the senior rater to be credible and superior in persuasion to the plaintiff's evidence. After a careful review of this record, this Court finds that the Board's decision did not give undue weight to the two rater's views.

Substantial evidence in the record supports the Board's decision.

The plaintiff's third basic argument in seeking to overturn the Board's decision involves a direct attack on the Army regulations at issue here. Plaintiff here contends that the OSRB's and the ABCMR's reliance upon *ex parte* communications with the supervisor/rater and senior rater was in violation of the APA and a violation of his due process rights guaranteed under the Fifth Amendment to the United States Constitution.

 Specifically, the plaintiff alleges that AR 623–105, ¶ 9–8.*b*., which allows the OSRB to contact the rating officials without his presence, is impermissible and unlawful because it violates the APA. The OSRB regulation provides:

> Board proceedings are administrative and nonadversary; the provisions of AR 15–6 do not apply. *Although not bound by the rules of evidence for trials by court-martial or other court proceedings*, the board does keep within the reasonable bounds of evidence that is competent, material, and relevant. The appellant or his or her agent are not authorized to appear before the board. However, *the board may obtain more information from the appellant, the rating officials, persons in the chain of command, or anyone thought to have first-hand knowledge of the case*. The appellant will generally be contacted by official correspondence if deemed necessary. Normally, the board will not contact those who provided a third party statement of support unless there is a need for clarification. [Emphasis added.]

Plaintiff grounds his contention on 5 U.S.C. § 556 (1988) which addresses the appropriate procedures to use in APA hearings. Unfortunately for the plaintiff's argument, however, section 556 applies only to those APA hearings required by sections 553 or 554 of title 5 of the United States Code, and both of those sections expressly exempt "military or foreign affairs function[s]" from their provisions. Thus, sec-

tion 556 is not applicable in this military pay case.

▮▮▮▮ Moreover, the APA does not grant jurisdiction to this Court to entertain claims such as the plaintiff's military pay claim at issue. The parameters of this Court's jurisdiction to order relief stems from the Tucker Act, 28 U.S.C. § 1491 (1982 & Supp. V 1987). In claims alleging illegal separation, this Court's jurisdiction is premised on the fact that an illegal separation is a legal nullity which is void and that an unlawfully separated employee continues to accrue entitlements to pay and emoluments of the position from which he was separated. *See United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976) (citing *United States v. Wickersham*, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906)). Absent an unlawful personnel action, which deprives a claimant of money to which he would be otherwise entitled, there exists no jurisdiction under the Tucker Act to entertain a claim for back pay. Stated another way, the Court's jurisdiction is limited to claims for money presently due from the United States. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The APA, on the other hand, specifically provides that it does not establish jurisdiction over claims for money. 5 U.S.C. § 702 (1988).

In view of the above discussion, it follows that the plaintiff's APA argument is unavailing. The regulations at issue here do not violate the dictates of the APA. There is no legal error.

▮▮▮▮ Likewise, the plaintiff's contention that the procedures utilized by the ABCMR [4] and the OSRB violated his constitutional right to due process can be addressed summarily. Service members have no constitutional rights to remain on active duty, and their rights are defined by the applicable statutes and regulations. *See Alberico v. United States*, 7 Cl.Ct. 165, 168–69 (1984), *aff'd*, 783 F.2d 1024 (Fed.Cir.

1986). The plaintiff has no constitutional right to a full evidentiary hearing as to his allegations of bias in the rating process. *See Armstrong v. United States*, 205 Ct.Cl. 754, 764 (1974); *Crispino v. United States*, 3 Cl.Ct. 306, 313 (1983) and cases cited therein. The military regulations at issue here were designed to facilitate a review on the record of plaintiff's claims. They were designed specifically to give members of the military a useable administrative process by which to present their claims without the entanglements of an entire due process structure. It should be noted that Board procedures do allow the plaintiff to receive copies of the case summaries and advisory opinions that are provided from the OSRB to the Board for whatever rebuttal the parties may wish to make. This procedure was followed in this case, and the plaintiff had the opportunity to make a rebuttal to the OSRB advisory opinion furnished to the Board. Under the circumstances here, this Court can find no violation of the plaintiff's due process rights by the failure of the Board to grant the plaintiff a full hearing. There was no arbitrary and capricious action by the Board.

▮▮▮▮ The plaintiff's fourth basic argument can also be addressed in summary fashion. The plaintiff has contended that the ABCMR has used an "unlawful" standard in resolving the plaintiff's application before the Board. Instead of using the "clear and convincing" standard of proof, the plaintiff asserts that the Board applied a "conclusive" standard to the plaintiff's application.

The ABCMR used the correct standard in considering the plaintiff's application. Army regulation 623–105, ¶ 9–7.*a.*(1) & (2), provides that the plaintiff has the burden of proving "clearly and convincingly" that the presumption of regularity should not be applied to the OER and that action

---

4. ABCMR regulations also allow for the Board to request advisory opinions from other Army staff officers. AR 15–185, ¶ 27.*b.* "This Court has consistently sanctioned the right of the Board to receive advisory opinions and recommendations before deciding weighty matters

such as those involved in this case. *See Koster v. United States*, 231 Ct.Cl. 301, 309–10, 685 F.2d 407, 412–13 (1982); *Armstrong v. United States*, 205 Ct.Cl. 754, 764 (1974)." *Braddock*, 9 Cl.Ct. at 473.

(removal of the OER from his record) was warranted to correct a material error, inaccuracy, or injustice. Paragraph 9–7.*b.* of that regulation defines "clear and convincing" evidence. The ABCMR concluded that it was "not *convinced* that the allegation of a personality conflict caused an inaccurate evaluation." (Emphasis added.) The ABCMR also concluded that "the rating officials provided *convincing* rationale for rating the applicant as they did." (Emphasis added.) A fair reading of the ABCMR's decision establishes that the ABCMR applied the correct standard in considering the plaintiff's application for relief.

In summary, this Court concludes from all of the evidence in the record that the plaintiff received fair and equitable consideration of his application for correction of his OER. The plaintiff has failed to convince this Court that the Board's actions were arbitrary and capricious, unsupported by substantial evidence, or contrary to law. As such, this Court must deny the plaintiff's cross-motion for summary judgment and grant the defendant's motion for summary judgment.

## CONCLUSION

For the reasons mentioned in this opinion, the defendant's motion for summary judgment is granted, the plaintiff's cross-motion for summary judgment is denied, and the complaint is to be dismissed.

Each party is to bear its own costs.