Gregory **ALBERICO**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 720–83C.

United States Claims Court.

Dec. 28, 1984.

Alan C. Friedberg, Denver, Colo., for plaintiff.

Michael T. Paul, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant; Lt. Col. Marshall M. Kaplan, Major Thomas R. Folk, Dept. of Army, of counsel.

## OPINION

KOZINSKI, Chief Judge.

### Facts

On August 12, 1977, Gregory Alberico was indicted by a federal grand jury in the District of Colorado. At the time, he was a captain in the United States Army Reserve, serving on active duty at the Rocky Mountain Arsenal in Colorado. Captain Alberico was charged with stealing approximately 375 pounds of high powered plastic explosives and $73,000 in government checks. He sold the explosives to persons he believed were terrorists but who, in fact, were FBI agents. Captain Alberico was convicted on December 13, 1977, fined $44,000 and sentenced to twenty years in prison.

On September 20, 1977, Captain Alberico's commanding officer barred him from the base on the grounds that his continued presence constituted a threat to security. At the same time, the Army took steps to release plaintiff from active duty under Chapter 5 of AR 635–100. The Army soon realized, however, that this process was lengthy and could not be completed before the second week of January 1978, at which time plaintiff would become eligible to apply for voluntary retirement in lieu of elimination. This would have entitled him to early retirement pay.

On November 25, 1977, the office of the Army's Deputy Chief of Staff for Personnel began to draft an amendment to AR 635–100 that would enable the Secretary to release Captain Alberico from active service on a more expedited basis. Paragraph 3–58 of the regulation was amended by the addition of subsection (g) which allows the Secretary of the Army to order the immediate release of a reserve officer found guilty of various serious crimes. Under the new procedure, a convicted reserve officer would be denied the opportunity for pre-release notice and hearing that was afforded to others under the regulation. On January 11, 1978, the Secretary of the Army approved the proposed amendment and it was implemented on January 12. Plaintiff was ordered released from active duty immediately. The release came hours before he would have become eligible to elect retirement in lieu of elimination and effectively deprived plaintiff of early retirement pay.[1]

In March of 1978, plaintiff filed an application with the Army Board for the Correction of Military Records (ABCMR) requesting that his involuntary release be expunged and that his application for retirement under 10 U.S.C. § 3911 be granted. The application was denied on April 13, 1979.

The Tenth Circuit affirmed plaintiff's criminal convictions on August 24, 1979, *United States v. Alberico*, 604 F.2d 1315 (10th Cir.1979), and he is currently serving his sentence. This suit was filed on December 5, 1983.

### Issues Presented

Plaintiff claims that the Secretary failed to follow the general policy of the Department of Defense that reserve and regular officers are to receive equal treatment; that he was deprived of due process when the Secretary of the Army released him from active duty under amended AR 635–100; that the amendment to AR 635–100 is a bill of attainder or an ex post facto law; and that the ABCMR acted arbitrarily, ca-

---

1. Captain Alberico, who had served several tours of duty in Vietnam, was granted an honorable discharge and is eligible for retirement at age 60 pursuant to 10 U.S.C. § 1331. At issue in this case is only his entitlement to early retirement pay under 10 U.S.C. § 3911.

priciously and unlawfully in denying his claim for relief.

Defendant has moved for summary judgment arguing that plaintiff's claim is barred by laches and that plaintiff is, in any case, not entitled to relief on any of the grounds he has advanced.

## Discussion

### A. *Laches*

■ To establish laches, defendant must show "inexcusable or excessive delay on the part of the plaintiff and prejudice to the defendant resulting therefrom." *Bunge Corp. v. United States*, 5 Cl.Ct. 511, 521 (1984). Plaintiff's cause of action accrued in January of 1978, upon his release from active duty. *See Mariner v. United States*, 1 Cl.Ct. 430, 433, *aff'd*, 727 F.2d 1118 (Fed. Cir.1983). His application to the ABCMR was denied on April 13, 1979. He filed this action on December 2, 1983, four years and seven months later.

Delays significantly shorter than four years and seven months have routinely been found sufficient to support a laches defense. *See Brundage v. United States*, 205 Ct.Cl. 502 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1974) (3 years, 8 months); *Bunge*, 5 Cl.Ct. 511 (3 years); *Fleming v. United States*, 2 Cl.Ct. 111 (1983) (11 months). However "delay alone does not constitute laches." *Brundage*, 205 Ct.Cl. at 509. To prevail on a laches defense the United States must establish that it has been prejudiced by plaintiff's delay. To meet this burden defendant makes a general assertion that witnesses have left the Service and that memories are fading. Defendant,. however, undercuts the suggestion that it has suffered by plaintiff's delay by moving for summary judgment on the ground that there are no material issues of fact in dispute. Since the court agrees that no material facts are in dispute, defendant will not be prejudiced by dimmed memories or lost witnesses. Defendant has suggested no other way in which it may have been prejudiced by plaintiff's delay. The court therefore rejects defendant's laches argument and turns to the merits of defendant's motion.

### B. *Department of Defense Policy*

■ Plaintiff claims that his release from active duty violated a Department of Defense policy that provides for equal treatment of the reserve and regular components of the armed services. Even if one were to accept plaintiff's assertion that such a policy exists, it cannot form the basis of a claim for money damages in this court unless it is embodied in a statute, regulation or constitutional provision. *See United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Plaintiff has been unable to point to such a provision. His claim is therefore beyond the court's jurisdiction.

### C. *Violation of Due Process*

■ Plaintiff was released from active duty on the basis of a criminal conviction. The criminal process afforded plaintiff the very finest procedural protections our system of justice can offer. Plaintiff is bound by the determination of guilt and cannot claim the right to a further hearing on that issue. *O'Brien Gear & Machine Co. v. United States*, 219 Ct.Cl. 187, 198, 591 F.2d 666 (1979). As to the remaining aspects of the Secretary's decision, plaintiff was afforded a hearing, albeit after the fact, before the ABCMR. The procedural protections afforded to plaintiff complied fully with the requirements of procedural due process. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Giles v. United States*, 213 Ct.Cl. 602, 553 F.2d 647 (1977); *McFarland v. United States*, 207 Ct.Cl. 38, 517 F.2d 938 (1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).[2]

---

2. Only in rare cases will due process require a hearing *prior* to the termination of a benefit or a property interest. In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), for example, the Court required a hearing before the termination of welfare benefits because

Plaintiff has also failed to establish a deprivation of substantive due process. Captain Alberico had no property interest in his position as a reserve officer on active duty. *See Pauls v. Secretary of the Air Force,* 457 F.2d 294 (1st Cir.1972); *Coppedge v. Marsh,* 532 F.Supp. 423 (D.Kan.1982); *Woodward v. Moore,* 451 F.Supp. 346 (D.D.C.1978). The statute governing plaintiff's status provides that "[e]xcept as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." 10 U.S.C. § 681 (1982). Another section, dealing specifically with the discharge of reserve officers, provides that "[s]ubject to other provisions of this title, reserve commissioned officers may be discharged at the pleasure of the President." 10 U.S.C. § 1162 (1982). As the Fifth Circuit noted in *Sims v. Fox,* 505 F.2d 857, 861 (5th Cir.1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975), "[o]ne who may be discharged 'at the pleasure' of another; i.e., arbitrarily, for no cause whatsoever, simply has no property right to continued employment."

Nor did plaintiff's release from active duty as a result of his criminal conviction violate any liberty interest. In *Arnett v. Kennedy,* 416 U.S. 134, 157, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974), Mr. Justice Rehnquist noted that, "[l]iberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee." It follows that there must be some factual dispute about the alleged incident before a liberty interest is implicated. *Codd v. Velger,* 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–85, 51 L.Ed.2d 92 (1977). Here, plaintiff was released from active duty because he was convicted of selling explosives, stolen from the Army, to a group he believed were terrorists. There is no factual dispute. Plaintiff was found guilty of a serious crime and must now bear the implications of that guilt.

Finally, plaintiff had no constitutional entitlement to the delay inherent in the deactivation procedures as they existed prior to their amendment on January 12, 1978. Delay is an unfortunate by-product of procedures designed to serve due process; due process does not, however, guarantee delay as an end in itself. When, as here, the requirements of due process have been met without delay, plaintiff cannot claim a substantive entitlement to delay for its own sake.

### D. *Bill of Attainder*

The Supreme Court has defined bills of attainder as "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Brown,* 381 U.S. 437, 448–49, 85 S.Ct. 1707, 1714–15, 14 L.Ed.2d 484 (1965) (quoting *United States v. Lovett,* 328 U.S. 303, 315–16, 66 S.Ct. 1073, 1078–79, 90 L.Ed. 1252 (1946)). The parties agree that subsection (g) was added to paragraph 3–58 of AR 635–100 in response to plaintiff's case, and that it was applied to him only hours before his right to early retirement would have vested. The Supreme Court, however, has rejected the argument that "an individual or defined group is attainted whenever he or it is compelled to bear burdens which the individual or group dislikes." *Nixon v. Administrator of General Services,* 433 U.S. 425, 470, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The amendment does not single out

---

such termination would have left plaintiff destitute. In later cases the Court has consistently emphasized that a hearing is required at some time, but not necessarily prior to the termination of a government benefit. In *Mathews v. Eldridge,* for example, plaintiff was deprived of social security disability benefits and was granted a hearing only after the benefits had been terminated. The Court declined to find a violation of due process where the prescribed procedures "not only provide the claimant with an effective process for asserting his claim prior to any administrative action, but also assure a right to an evidentiary hearing, as well as to subsequent judicial review, before the denial of his claim becomes final." 424 U.S. at 349, 96 S.Ct. at 909.

plaintiff for punishment. It is a provision of general applicability that can be invoked against any Army reserve officer found guilty of specific criminal offenses. While plaintiff's case brought the need for the amendment to the Army's attention, the provision obviously was meant to take care of all similar situations in the future and was drafted accordingly.[3]

The provision in question also is not a bill of attainder because it does not inflict punishment. *De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), is controlling on this point. That case involved the New York Waterfront Commission Act of 1953, which provided that no one who had been convicted by a court of the United States could "solicit, collect or receive any dues, assessments, levies, fines or contributions" from union members. Plaintiff, a local officer of the Longshoremen's Union, had been convicted of grand larceny in 1920. He challenged the act as a bill of attainder. The Court rejected this claim, explaining that, "[t]he distinguishing feature of a bill of attainder is the substitution of a legislative for a judicial determination of guilt." *Id.* at 160, 80 S.Ct. at 1155. The section in question, the Court reasoned, "embodies no further implications of appellant's guilt than are contained in his 1920 judicial conviction; and so it manifestly is not a bill of attainder." *Id.*

▇ Paragraph 3–58(g) of AR 635–100, like the New York Waterfront Commission Act, does not substitute a legislative for a judicial determination of guilt. It "embodies no further implications of [plaintiff's] guilt" than are contained in his criminal conviction. The section merely recognizes that officers convicted of certain crimes cannot be assigned the grave responsibility of conducting our national defense. The provision is reasonably calculated to promptly disengage such officers from the activity they can no longer be trusted to perform.

### E. *Ex Post Facto Law*

▇ "The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts." *De Veau v. Braisted,* 363 U.S. 144, 158–60, 80 S.Ct. 1146, 1153–55, 4 L.Ed.2d 1109 (1969). The fact that a measure has a serious detrimental impact on an individual does not automatically render it an ex post facto law. "The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession." *Id.* at 160, 80 S.Ct. at 1155.

In *Fleming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), plaintiff was deprived of social security benefits because he had been a member of the communist party 20 years earlier. The Court determined that the provision depriving plaintiff of benefits was not punitive and, therefore, was not an ex post facto law. It noted that "[w]here the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected." *Id.* at 614, 80 S.Ct. at 1374. The Court concluded that "it cannot be said ... that the disqualification of certain deportees from receipt of Social Security benefits while they are not lawfully in this country bears no rational connection to the purposes of the legislation of which it is a part, and must without more therefore be taken as evidencing a Congressional desire to punish." *Id.* at 617, 80 S.Ct. at 1376.

▇ The amendment to AR 635–100 has an important non-punitive purpose. The Army has a strong and legitimate interest in promptly removing convicted criminals from its active rolls. Moreover, by virtue

---

3. Defense counsel advised the court at oral argument that the provision has, in fact, been applied to others since its promulgation. Official Transcript in the Matter of *Alberico v. United States,* Nov. 8, 1984, at 91 (filed Dec. 10, 1984).

of his conviction, plaintiff was rendered useless for recall in case of an emergency. Military retirement pay is, in part, compensation for such continued availability in case of war or national emergency. The Army could properly decide that one who had sold explosives from a military arsenal to apparent terrorists would not be suitable for recall in such circumstances. Removing plaintiff from the rolls promptly, thereby cutting off his early retirement pay, had the non-punitive purpose of assuring that the military did not pay plaintiff for services he could neither provide nor be trusted to perform. As in *Fleming v. Nestor*, the regulation here merely set the standard for continued employment; it did not provide for additional punishment. It is not an ex post facto law.

### Conclusion

The ABCMR did not act arbitrarily, capriciously or unlawfully in failing to reinstate plaintiff and award him the benefits of early retirement. Defendant's motion for summary judgment is granted. The clerk is directed to dismiss the complaint with costs to the prevailing party.