**Timothy KINNEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–48 C.

United States Court of Federal Claims.

Nov. 30, 2001.

---

Ronald P. Keller, Xenia, OH, for plaintiff.

E. Michael Chiaparas, with whom were Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director, Bryant G. Snee, Assistant Director, Department of Justice, Washington, DC, for defendant. Lieutenant Colonel Bruce Lennard, Chief, Military Personnel Branch, General Litigation Division, AFLSA/JACL, Arlington, VA, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

Plaintiff, Timothy Kinney, is a former United States Air Force lieutenant colonel who was dropped from the service rolls by action of the Secretary of the Air Force in 1997. Plaintiff has filed suit against the United States, acting through the United States Air Force, challenging the denial of his application for the correction of his military records. Plaintiff petitions the court: (1) to order rescission of the decision to drop plaintiff from the service rolls of the Air Force, (2) to order plaintiff's reinstatement with back pay and benefits, and (3) to order

the acceptance of plaintiff's application for retirement status and related benefits. Defendant has moved to dismiss plaintiff's complaint or, in the alternative, for judgment upon the administrative record. Plaintiff has cross-moved for judgment upon the administrative record. For the following reasons, defendant's motion to dismiss is GRANTED with respect to plaintiff's constitutional claims. Defendant's motion for judgment upon the administrative record is GRANTED with respect to plaintiff's remaining claims. Plaintiff's cross-motion for judgment upon the administrative record is DENIED.

## I. Background

By application signed on June 9, 1994, plaintiff, an active duty lieutenant colonel in the Air Force, sought voluntary retirement effective August 31, 1994. Plaintiff's Statement of Facts (Pl.'s Facts) ¶¶ 1, 3. That application was returned unprocessed to plaintiff by plaintiff's commander under cover of a transmittal memorandum dated June 12, 1994. Defendant's Appendix (Def.'s App.) 1–2. In June 1994, plaintiff was indicted by a grand jury in Montgomery County. Ohio, on twelve separate counts of sexual crimes involving a person under thirteen years of age. Complaint (Compl.) ¶ 5; Defendant's Motion to Dismiss, or, in the Alternative, Motion for Judgment Upon the Administrative Record (Def.'s Mot.) at 2. In August 1995, plaintiff pleaded guilty to seven felony counts of illegal sexual acts with his pre-teen daughter. Pl.'s Facts ¶ 5; Def.'s Mot. at 3, 4. In November 1995, plaintiff was sentenced in the Common Pleas Court of Montgomery County, Ohio to a minimum of seven years and a maximum of fifteen years in the Ohio State Prison System. Pl.'s Facts ¶ 6; Def.'s App. at 55. Plaintiff was released from prison under a "shock" probation program after serving seven months of confinement. Pl.'s Facts ¶ 11; Def.'s App. at 61.

On July 12, 1996, one day after his release from prison, plaintiff reported to his duty section for work and completed Air Force Form 1160 titled "Military Retirement Actions" requesting a retirement date of November 30, 1996. Administrative Record (AR) at 14, 19; Def.'s Mot. at 4. On February 24, 1997, the Secretary of the Air Force ordered that plaintiff "be dropped from the rolls as a regular officer of the United States Air Force, pursuant to Air Force Instruction 36–3207, Chapter 4." AR at 24. When the Air Force dropped plaintiff from its rolls (the DFR action), plaintiff had served on active duty for twenty-three years. Compl. ¶ 3.

In July 1997, approximately four months after the DFR action, plaintiff applied to the Air Force Board for Correction of Military Records (AFBCMR) seeking rescission of the DFR action and approval of his retirement request. AR at 4. In August 1998, the AFBCMR denied plaintiff's application "find[ing] insufficient evidence of error or injustice to warrant corrective action." AR at 2, 3. Plaintiff sought reconsideration of his case by the AFBCMR in May 1999. AR at 34. In April 2000, the AFBCMR denied the request for reconsideration, again finding a lack of evidence of error or injustice. AR at 30. Plaintiff filed suit in this court on January 24, 2001, petitioning the court to compel his reinstatement in the Air Force with back pay and benefits, to compel approval of his retirement request, and to award five million dollars compensatory damages.

## II. Discussion

### A. Standard of Review

Defendant bases its motion to dismiss on Rule 12(b)(4) of the Court of Federal Claims (RCFC). Rule 12(b)(4) provides for dismissal based on the "failure to state a claim upon which relief can be granted." RCFC 12(b)(4). The Supreme Court has stated that in evaluating a motion to dismiss for failure to state a cause of action, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *LaMirage, Inc. v. United States*, 44 Fed.Cl. 192, 196 (1999). In rendering a decision on a motion to dismiss, the court must presume that undisputed factual allegations in the complaint are true. *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army and Air Force Exch.*

*Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988); *La-Mirage,* 44 Fed.Cl. at 196.

Alternatively, defendant seeks judgment upon the administrative record under RCFC 56.1. As the parties agree,[1] the applicable standard of review of the decision of the AFBCMR is "whether the Board's action was arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure." *Wyatt v. United States,* 23 Cl.Ct. 314, 318–19 (1991); *see also Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Martinez v. United States,* 26 Cl.Ct. 1471, 1474 (1992), *aff'd,* 11 F.3d 1069 (Fed.Cir. 1993) ("[T]he scope of judicial review for a military board's decision is narrow.").

Plaintiff bears the burden of proving that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence. *Arens v. United States,* 969 F.2d 1034, 1037 (Fed.Cir.1992). The Secretary " 'must base his decision on the record as the board presents it to him.' " *Adkins v. United States,* 68 F.3d 1317, 1325 (quoting *Selman v. United States,* 723 F.2d 877, 880 (Fed.Cir.1983)). The Federal Circuit instructs that the court may not "improperly exercise any discretion reserved for the military; 'it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.' " *Adkins,* 68 F.3d at 1323 (quoting *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir. 1993)).

### B. Plaintiff's Complaint

In his complaint, plaintiff alleges that the "Air Force's action to drop [him] from the rolls rather than to initiate an administrative discharge action pursuant to AFI 36–3206" violated his constitutionally guaranteed procedural and substantive due process rights. Compl. ¶ 12. He specifically complains that: (1) the DFR action deprived him

of "a Constitutionally protected property right in his military retirement," *Id.* ¶ 13; (2) defendant failed to "follow the previous advisory opinions published by the Judge Advocate General's [ (JAG) ] Office of the United States Air Force" with respect to DFR actions. *Id.* ¶ 18; (3) defendant never processed "[p]laintiff's application for retirement [which] is still pending[,]" *Id.* ¶ 19; and (4) defendant "failed to follow its own regulations, to wit: AFI 32–3207 Table 22 Rule 12" and did not suspend the DFR action pending the processing of plaintiff's retirement application. *Id.* ¶ 17.

### C. Constitutional Claims

In response to plaintiff's constitutional allegations, defendant states that due process rights under the Fifth Amendment of the United States Constitution are "accorded only where life, liberty, or property are at stake." Def.'s Mot. at 11. Defendant argues that plaintiff "had no property or liberty interest affected by his removal from the rolls of the USAF and his life was not at stake." *Id.*

#### 1. The legal authority for DFR actions

In reviewing plaintiff's constitutional claims, the court first examines the legal authority for DFR actions. Title 10, United States Code, Section 1161 provides for the dismissal of commissioned officers from the armed services by DFR action. Subsection (b)(3) of § 1161 states:

> The President may drop from the rolls of any armed force any commissioned officer ... who is sentenced to confinement in a Federal or State penitentiary or correctional institution after having been found guilty of an offense by a court other than a court-martial or other military court, and whose sentence has become final.

10 U.S.C. § 1161 (1998); AR at 23. Air Force Instruction (AFI) 36–3207 also addresses the separation of commissioned officers from the Air Force. Def.'s Mot. at 8;

---

1. *See* Plaintiff's Response to Defendant's Motion to Dismiss, or in the Alternative, Motion for Jud[g]ment upon the Administrative Record and

Plaintiff's Motion for Judgment Upon the Administrative Record (Pl.'s Resp.) at 4; Def.'s Mot. at 6.

Def.'s App. at 213. Chapter 4 of that regulation for DFR actions [2] provides:

[A General Court–Martial Convening Authority] may recommend that the [Secretary of the Air Force] drop [an] officer[ ] from the rolls when: [t]he officer has been found guilty of an offense by a court other than a court-martial or other military court and has been sentenced to confinement (including a suspended sentence) in a Federal or state penitentiary or correctional institution, and the conviction has become final.

AFI 36–3207, ch. 4, ¶ 4.2.1; Def.'s App. at 213. The Office of the Air Force Secretary makes the final decision on all recommendations for DFR actions.[3] Def.'s App. at 215.

Plaintiff's own complaint states that he pled guilty to multiple felonies and was sentenced in a civilian criminal court. Compl. ¶ 5. Plaintiff does not dispute that his conviction was final. Paragraph 4.2.1.1 of AFI 36–3207 allows a DFR action following a final conviction in a civilian criminal court. Def.'s App. at 213. Accordingly, under the applicable statute and regulation, plaintiff was properly subject to a DFR action. 10 U.S.C. § 1161(b)(3); Def.'s App. at 213.

2. Case law addressing constitutional challenges to DFR actions

■ Defendant responds to plaintiff's claim that the DFR action violated plaintiff's constitutional rights with citations to several persuasive authorities. With regard to a claimed violation of plaintiff's liberty interests, defendant relies on *Helmich v. Nibert,* 543 F.Supp. 725 (D.Md.1982), *aff'd without op.,* 696 F.2d 990 (4th Cir.1982). The plaintiff in *Helmich* was a reserve officer in the Army who was dropped from the rolls following a civilian criminal conviction that resulted in a twelve year jail sentence. 543 F.Supp. at 727. The *Helmich* plaintiff filed suit against the Army officer who signed the

letter advising plaintiff of the drop, complaining that his due process rights were violated by the action to drop him from the rolls without a board hearing. *Id.* In dismissing plaintiff's case, the district court found that because no life, liberty, or property interest was affected by the DFR action, plaintiff had no due process rights:

Plaintiff's life was not in question in his removal from the rolls. It is also clear that no property interest of his was involved, because plaintiff had no property interest in his military status. Liberty interests are involved only when separation from the military is carried out in such fashion as to stigmatize the separated member, typically by dishonorable discharge. Here, the separation was carried out merely by dropping plaintiff from the rolls. This is clearly not equivalent to a discharge. It is purely a nondisciplinary administrative action which carries no connotations, good or bad, and it thus cannot deprive plaintiff of any liberty interest. Accordingly, this court concludes that plaintiff had no due process right in his being dropped from the Army rolls.

*Id.* at 727–28 (citations omitted).

In response to plaintiff's procedural and substantive due process claims, defendant cites authority involving a separation effected just prior to the time a reserve officer became retirement eligible. *See Alberico v. United States,* 7 Cl.Ct. 165 (1984), *aff'd,* 783 F.2d 1024 (Fed.Cir.1986). Plaintiff in *Alberico* was a captain in the Army Reserve serving on active duty at an arsenal in Colorado prior to his conviction and sentencing to twenty years in prison. *Id.* at 167. To expedite plaintiff's release from the armed services, the Secretary of the Army approved a regulatory amendment permitting the immediate release of plaintiff from the service shortly before plaintiff became eligible to

---

2. "[D]ropping an officer from the rolls of the Air Force ends military status as of 2400 hours on the date specified in the Department of Air Force (DAF) orders . . . ." Def.'s App. at 213.

3. The statute contemplates that a DFR action will be taken by the President. Under AFI 36–3207. Section 4.5, the Air Force Secretary has

the power to act. Def.'s App. at 215. This potential conflict between the statute and the regulation is not an issue here not only because the parties do not raise the point, but also because the Air Force Secretary was acting under the "direction of the President." AR at 24.

elect retirement in lieu of involuntary separation under 10 U.S.C. § 681 (1982).[4] *Id.*

Challenging his involuntary separation, the *Alberico* plaintiff applied to the Army Board for Correction of Military Records (ABCMR). *Alberico,* 7 Cl.Ct. at 167. After the ABCMR's denial of his application, he filed suit against the United States in the Claims Court alleging, among other things, that his involuntary release from the Army deprived him of his due process rights. Addressing plaintiff's allegation of due process deprivation, the Claims Court stated:

> Plaintiff was released from active duty on the basis of a criminal conviction. The criminal process afforded plaintiff the very finest procedural protections our system of justice can offer. Plaintiff is bound by the determination of guilt and cannot claim the right to a further hearing on that issue.

*Id.* at 168. The court added that the allowance of a hearing before the ABCMR, even after his involuntary separation, fully satisfied the requirements of procedural due process. *Id.*

Finding no violation of procedural due process, the court stated that the *Alberico* plaintiff also failed to establish a deprivation of substantive due process. *Id.* at 169. The court explained that plaintiff had no property interest in his position as a reserve officer on active duty because the governing statutes permitted the Secretary to, "at any time release a Reserve [service member] under his jurisdiction from active duty." *Alberico,* 7 Cl.Ct. at 169 (quoting 10 U.S.C. § 681 (1992)). The court observed that one who may be discharged at the discretion of another simply has no property right to continued employment. *Id.*

The court in *Alberico* also found that plaintiff's release from active duty as a result of his criminal conviction did not violate any liberty interest absent a dispute about the underlying factual basis for the dismissal. *Id.* Quoting from the Supreme Court's opinion in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Claims Court stated that " 'liberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee.'" *Alberico,* 7 Cl.Ct. at 169 (quoting *Arnett,* 416 U.S. at 157, 94 S.Ct. 1633 (1974)).

The court finds the *Helmich* and *Alberico* decisions persuasive authority that the Air Force's DFR action did not deprive plaintiff of a liberty or property interest in military retirement. *Alberico,* 7 Cl.Ct. at 169; *Helmich,* 543 F.Supp. at 727; *See Paskert v. United States,* 20 Cl.Ct. 65, 77 (1990) ("[S]ervice members have no constitutional rights to remain on active duty, and their rights are defined by the applicable statutes and regulations.").

The court's conclusion is also supported by the decision of the Court of Claims in *Norman v. United States,* 183 Ct.Cl. 41, 392 F.2d 255 (1968), involving an action by six retired Air Force officers seeking the difference between their retirement pay and the active duty pay that the officers would have received if they had not been retired early. Challenging the effect of the White Charger Act,[5] which authorized the military to conduct early retirement boards, the plaintiffs in *Norman* contended that their involuntary retirement prior to their statutorily prescribed tenures[6] deprived them of a vested property

---

4. This statutory provision was renumbered as § 12313 on October 5, 1994 by Pub.L. 103–337, Div. A, Title XVI, § 1662(e)(2), 108 Stat. 2992.

5. The White Charger Act of 1960 was enacted by Section 10 of Pub.L. No. 86–616, 74 Stat. 386. The name of the Act derived from "an observation that this legislation went through Congress 'like a White Charger.'" *Norman,* 392 F.2d at 256.

6. "Statutorily prescribed tenure" refers to the number of years that an officer could expect to continue active service under the Officer Per-

sonnel Act of 1947. Officer Personnel Act of 1947, ch. 512, § 312(h), 61 Stat. 795, 860 (repealed 1981) (The current law regarding discharge of naval lieutenants for failure of promotion is divided between regular duty and limited duty officers. 10 U.S.C. §§ 631 & 8383 (1994)); *Norman,* 392 F.2d at 257. Under that Act, a lieutenant colonel could expect to continue in active service until he had completed twenty-eight years of service. *Id.* The parallel expectation of continued service for a colonel was until the completion of thirty years of active service. *Id.*

right, specifically, the retirement pay that would have accrued to plaintiffs if they had not been retired early. Addressing the issue of whether the early retirement of the service members deprived them of a property right without due process of law, the Court of Claims held that the officers had no vested or contractual right to any particular amount of retired pay under statute. *Id.* at 259–60. The Court of Claims observed that "[t]he principle is well established that there is no vested right to Federal employment or to the privileges of retirement thereby." *Id.* at 259.

Similarly, in *Hooper v. United States,* 164 Ct.Cl. 151, 326 F.2d 982 (1964), *cert. denied,* 377 U.S. 977, 84 S.Ct. 1882, 12 L.Ed.2d 746 (1964), the Court of Claims held that a dismissal from service effectively terminates a retired service member's entitlement to retirement pay. *Id.* at 988. Plaintiff in the *Hooper* case was a retired naval officer receiving retirement pay when he was charged by naval authorities with violations of the Uniform Code of Military Justice. *Id.* at 983. The charges against the *Hooper* plaintiff were based on activities alleged to have occurred at a private residence that was not part of any military reservation. *Id.* at 983–84. Without being recalled to active duty, plaintiff was tried by a naval court-martial and sentenced to dismissal and forfeiture of all pay and allowances. *Id.* at 984. Plaintiff challenged the exercise of court-martial jurisdiction over him on the ground that court-martial jurisdiction is "strictly limited to those persons who bear such a proximate relationship to the Armed Forces and their functions as to be reasonably treated as 'in' the Armed Forces." *Id.* However, the court held that the exercise of jurisdiction by the military tribunal was constitutionally valid under Article 1, Section 8 of the United States Constitution which permits Congress " 'to make Rules for the Government and Regulation of the land and naval Forces.' " *Id.* at 987 (quoting U.S. Const. art. 1, § 8). The Court of Claims reasoned:

> [W]e believe that this plaintiff was part of the land or naval forces. We say this because the salary he received was not solely recompense for past services, but a means devised by Congress to assure his availability and preparedness in futures contingencies. He had a direct connection with the operation of the 'land and naval forces.' Thus, he formed a part of the vital segment of our national defense and it naturally follows that he should be subject to military discipline.... [Plaintiff's] dismissal from the Navy was a valid exercise of the powers reposed in the President as Commander–in–Chief.... [Thus,] his entitlement to retired pay no longer exists.

*Id.* at 987–88.

Unlike the *Hooper* plaintiff, plaintiff here does not challenge the charges ultimately leading to his criminal sentencing. *See* Pl.'s Resp. at 13–14. Indeed, plaintiff pleaded guilty to seven felony counts. Def.'s Mot. at 4. Rather, plaintiff challenges the validity of the DFR action on the grounds that the action violated his constitutionally protected property and liberty rights. Pl.'s Resp. at 6. Plaintiff argues that because "[p]laintiff had served the requisite number of years for retirement and was retirement eligible ... he clearly had a property interest which was subject to the due process standards." *Id.* Plaintiff distinguishes "each of the cases cited" (referring generally to cases cited in defendant's motion) by explaining that the service member in question did not have the requisite number of years of military service entitling him to retirement benefits, *Id.* at 4, an argument that ignores at least *Hooper,* where the plaintiff was already receiving retirement pay. 326 F.2d at 984. Except for that single observation, plaintiff's arguments do not counter the case law finding the lack of a vested property interest in a service member's military status, including status and benefits as a military retiree.

Reading the *Norman* and *Hooper* decisions together with the *Helmich* and *Alberico* decisions, the court concludes that the DFR action did not violate plaintiff's liberty interests, that plaintiff had no protected property interest in his military retirement, and that the DFR action did not deprive plaintiff of either procedural or substantive due process.[7] *See Alberico,* 7 Cl.Ct. at 169; *Hel-*

---

7. The harshness of the consequences associated with a service action resulting in the loss of a

*mich,* 543 F.Supp. at 728; *Norman,* 392 F.2d at 259–60; *Hooper,* 326 F.2d at 987.

Presuming the truth of all relevant and undisputed facts in the complaint, plaintiff has failed to states a constitutional claim upon which relief may be granted. *See Reynolds,* 846 F.2d at 747. The court therefore GRANTS defendant's motion to dismiss with respect to plaintiff's constitutional claims.

### D. Allegations that the AFBCMR's Action was Arbitrary, Capricious, and Contrary to the Applicable Rules and Regulations

Plaintiff complains that the decision of the AFBCMR denying plaintiff's request for correction of his military records was arbitrary and capricious. Compl. ¶ 18. Specifically, plaintiff complains that: (1) the AFBCMR failed to follow "advisory opinions" published by the Office of the Judge Advocate General, Compl. ¶ 18; (2) the AFBCMR did not consider the failure to process plaintiff's retirement application, *see* Compl. ¶ 19; and (3) the AFBCMR failed to follow Air Force regulations requiring the suspension of the DFR action pending processing of plaintiff's retirement application. *See* Compl. ¶ 17. The court first addresses plaintiff's allegations regarding the advisory opinion and then plaintiff's allegations regarding plaintiff's unprocessed retirement application.

### 1. The advisory opinion issued by the Office of the Judge Advocate General

■ Plaintiff argues that "numerous documents provided by the Defendant ... show[ ] that there is little, if any, due process offered a member who is being dropped from the Rolls." Pl.'s Resp. at 8. In particular, plaintiff relies on a Memorandum from the Office of the Judge Advocate General, dated October 10, 1995 (advisory opinion), responding to a request for guidance on when it is appropriate either to drop an officer from the Air

Force rolls or to administer a discharge under other than honorable conditions. *See id.* at 4–5; Def.'s App. at 51–53. In support of his position, plaintiff points to the statements in the advisory opinion that "there is no due process offered [a service] member in a DFR action," Def.'s App. at 52, and that a DFR action should be "used only sparingly." *Id.* at 53.

The advisory opinion is not addressed to plaintiff's case. Prepared in April 1995, some four months prior to plaintiff's conviction, the advisory opinion states that, if the law and regulations permit either a DFR action or an administrative discharge board action, the course of action to be pursued by a command "is a matter of policy rather than law." *Id.* at 52. Acknowledging that the "Air Force has no written guidance to assist commanders in selecting between these options," *id.,* the advisory opinion expressly cautions that its purpose is "to provide informal guidance" and that it "should not be taken as Air Force policy on the subject." *Id.* The advisory opinion then states, "As a general rule, ... [a] DFR action is properly used only sparingly, when the statutory criteria are met, it is not deemed essential to characterize the service of the member when additional due process is not in the interests of the Air Force, and circumstances dictate the rapid severance of the member from the Air Force." Def.'s App. at 53.

Plaintiff argues that effecting a DFR action without any policies, procedures, regulations or criteria to apply to DFR actions "can only lead to arbitrary results." Pl.'s Resp. at 5. Plaintiff alternatively argues that, contrary to the guidance in the Air Force advisory opinion to use a DFR action "sparingly" even when the statutory criteria have been met, a DFR action was pursued in this case with no evidence that any of the several policy factors mentioned in the advisory opinion were considered. *Id.*

service member's retirement benefits has been noted in the case law. In an analogous case involving the loss of substantial retirement benefits by an Air Force officer convicted by general court martial of committing indecent acts with a female under the age of 16, the United States Court of Appeals for the Armed Forces recently

observed that "[e]ven though a court-martial sentence may result in a huge loss of retirement pay, loss of veteran benefits, loss of the right to vote, or possess firearms, etc., these consequences all are beyond ... [the] jurisdiction [of the court]." *United States v. Sumrall,* 45 M.J. 207, 210 (1996).

<br>

**134**

Plaintiff's reliance on the advisory opinion is misplaced. Even if defendant were legally required to follow informal policy guidance,[8] the record here indicates that the enumerated conditions for the sparing use of a DFR action were considered and explicitly applied in the Air Force's decision to drop plaintiff from the rolls. Def.'s App. at 53. In a memorandum prepared during the processing of plaintiff's case by the Judge Advocate General's Office to document the legal review of dropping plaintiff from the rolls of the Air Force, Colonel Craig L. Head, Director of General Law, stated:

> Lt. Col Kinney meets the statutory and regulatory criteria for initiating [a DFR] action since he was sentenced by a state criminal court to a sentence of confinement and is currently in the state correctional system. Since his sentence is final, a DFR action may now be pursued.
>
> The General Law Division [of the Judge Advocate General's Office] ... suggested [in its April 1995 opinion][9] that a DFR action is more severe in impact tha[n] an administrative discharge action. That is certainly the case here since if discharge proceedings were initiated, Lt Col Kinney has the statutory right to retire ... as he is retirement eligible now. As such, he would be eligible for all the benefits that accrue to retired officers who have served honorably.... Should he be dropped from the rolls [however], he would not receive a ... Certificate of Release or Discharge from Active Duty, which is a prerequisite for veterans benefits. As a general rule, the General Law Division ... [has concluded that DFR actions] should be used sparingly when the statutory criteria ha[ve] been met....
>
> Service members in general and commissioned officers in particular must be held accountable for their actions. In the present situation, there are only two options available to dispose of Lt Col Kinney's case, one being a DFR action and the other an officer administrative discharge proceeding. As previously pointed out, an officer separation action would afford Lt Col Kinney the opportunity to retire honorably with all of the accompanying benefits. Viewing Lt Col Kinney's actions with his daughter, it would be most inappropriate to characterize those actions as honorable. Further, he committed these horrible infractions while on duty as an Air Force officer. Had the Air Force obtained jurisdiction in this case, he would have most certainly faced trial by general court-martial with the specter of a punitive discharge and an accompanying loss of veterans benefits. We should not now pursue a course of action which would permit him to retire honorably. Rather, we should treat Lt Col Kinney's case with the level of severity it deserves. He does not deserve to retire as an Air Force officer and definitely does not deserve an honorable discharge. He does deserve to be purged from our ranks, lose his retirement benefits and be treated as if he never served on active duty. Accordingly, a DFR action would deal most appropriately with Lt Col Kinney's misconduct.

Def.'s App. at 58–59.

Contrary to plaintiff's assertions, the memorandum of Colonel Head considered the very advisory opinion cited by plaintiff in connection with the legal review of the Air Force's decision to implement a DFR action in this case. Colonel Head's memorandum was part of the administrative record considered by the AFBCMR in its review of plaintiff's petition for correction of his military records. The court cannot find that the decision of the AFBCMR was either "arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure." *See Wyatt,* 23 Cl.Ct. at 318–19.

2. Plaintiff's unprocessed retirement application

a. The return of the 1994 retirement application

■ On June 9, 1994, less than two weeks after confessing his illegal sexual activity

---

8. The court is aware of no authority that would require the Air Force to consider the policy guidance contained in the advisory opinion.

9. This is the same advisory opinion to which plaintiff refers in his complaint and briefing.

with his daughter to investigative officers, *see* Def.'s App. at 14, plaintiff submitted a voluntary retirement application requesting an effective separation date of August 31, 1994. Compl. ¶ 6; Pl.'s Facts ¶ 3; Def.'s App. at 2. The application was returned to plaintiff under cover of a transmittal memorandum from plaintiff's commander stating:

> I have reviewed your application for retirement, and am returning it to you. After conferring with CCQ and JA, retirement is not an option at this time, given the circumstances.

Def.'s App. at 1. Plaintiff alleges that the return of the unprocessed application violated Air Force Regulation 35-7 Table 2.1. Pl.'s Facts ¶ 4; Plaintiff's Appendix (Pl.'s App.) at 8–13.

Section C of Air Force Regulation (AFR) 35-7 (July 13, 1990) addresses the restrictions on retirement that may exist for service members. Pl.'s App. at 7. Set forth in Table 2.1 of AFR 35-7 are "a number of conditions that can temporarily restrict a person otherwise eligible to retire." *Id.* Among the identified "conditions that preclude submission or processing of [a] retirement application" is "if [the service] member is under investigation." *Id.* at 8. The Air Force regulation instructs that pending such investigation, the processing of a retirement application is to be suspended until the investigation is complete. *Id.*

Plaintiff complains that his 1994 retirement application was returned to him rather than held in suspension by the Consolidated Base Personnel Office (CBPO) as required by AFR 35-7, Table 2.1. *See* Pl.'s Facts ¶ 4; Pl.'s App. at 1. Plaintiff further complains that the return of the application to him rendered the CBPO unable to process the application when the investigation was complete. Pl.'s App. at 1.

While plaintiff is correct that the return of his 1994 retirement application contravened the procedure outlined in AFR 35-7, Table 2.1, the court finds that this procedural violation was harmless error.

A harmless error does not entitle plaintiff to relief from the AFBCMR's decision. In correction board cases, a plaintiff is not entitled to relief in the absence of harmful procedural violations. *See Adkins,* 68 F.3d at 1326. The regulation required that the processing of plaintiff's retirement application be suspended while plaintiff was under investigation. The return of the application to plaintiff during this suspension did not harm plaintiff. Plaintiff submitted another retirement application on July 17, 1996 that was available to the CBPO for consideration and processing upon the completion of the investigation. *See* Pl.'s Facts ¶ 12; Pl.'s App. at 1–2; Def.'s App. at 63. Because the court finds that this alleged procedural violation was a harmless error, plaintiff is not entitled to rescission of the DFR action on this ground.

### b. The dual tracking of the DFR action and plaintiff's retirement application

■ Plaintiff alleges that his "application for retirement was never denied by the United States Air Force and therefore is still pending."[10] Compl. ¶ 19. Plaintiff asserts that in July 1996, he submitted to the Air Force personnel center for consideration a package of materials, including a retirement application, a "Waiver Request for Retirement in the Best Interests of the Air Force," and a "Request for Retirement in Lieu of Administrative Action Under AFI 36–3203." *See* Pl.'s Facts ¶¶ 12, 13; Pl.'s App. at 1–2. Plaintiff complains that in violation of Air Force Instruction (AFI) 36–3203, Table 2.2, Rule 12, the Air Force did not suspend the administrative action and process his retirement application but conducted a "dual action processing" without ever denying plaintiff's retirement application. Pl.'s Facts ¶ 15; Pl.'s App. 2.

The Air Force regulations, in addition to setting forth the procedure for effecting DFR actions, squarely address the handling of a retirement application by a service member who is under investigation. *See* Def.'s App. at 187. AFI 36–3203 prohibits the sub-

---

10. The court construes this allegation to refer to the retirement application that plaintiff submit-

ted on July 17, 1996.

mission or processing of a retirement application from a service member who is under investigation until the investigation is complete.[11]  *Id.*  If no further action is taken after the investigation is completed, normal processing of the retirement application may resume.  *Id.*  Table 2.2 of AFI 36–3203 sets forth certain "[r]estrictions on [r]etirement that may be waived in the best interest of the Air Force" Def.'s App. at 188–93.  The particular restrictions are denominated as Rules 1 through 19.  *Id.*  Rule 12, in particular, provides that: (1) if a service member is subject to an action initiated under an Air Force instruction, including, inter alia.  AFI 36–3206 (governing administrative discharge procedures for commissioned officers) or AFI 36–3207 (governing the separation of commissioned officers, including DFR actions), that may result in involuntary separation, (2) that service member is retirement eligible at the date of application, and (3) a waiver of the restriction on retirement is in the best interests of the Air Force, then the administrative action is suspended, and the retirement application is processed.  *Id.* at 191.

Plaintiff argues that the Air Force regulations "require that the DFR action be suspended until such time as the applicant's request for retirement is acted upon."  Pl.'s Resp. at 11.  Plaintiff reasons that because his retirement request was never acted upon, the DFR action was improper and "in violation of the Air Force's own regulations."  *Id.*  Plaintiff asserts that there is no provision for dual action processing.  Pl.'s Facts ¶ 15.

Plaintiff, however, misapprehends the referenced regulations.  While Rule 12 of AFI 36–3203, Table 2.2 does permit an administrative action, including a DFR action, to be suspended pending processing of a service member's retirement request, the regulatory instruction is clear that such suspension occurs only if it is "in the best interest of the Air Force."  Def.'s App. at 188–193.  Contrary to plaintiff's assertions, the suspension of a DFR action to process a retirement request is not a per se requirement once a waiver request has been filed.  Rather, the

suspension of the administrative action is contingent upon a determination by the Air Force—not by the applicant filing the request for waiver—that processing of a service member's retirement request is in the best interest of the Air Force.

Moreover, while plaintiff is correct that defendant "fails to cite any specific authority that allows dual processing" of plaintiff's retirement request and the DFR action, Pl.'s Resp. at 11, plaintiff, who bears the burden of proof in this case, fails to cite any authority expressly forbidding dual processing.  *See Arens,* 969 F.2d at 1037.  Nor has the court found any such prohibition.

The record here indicates that the "[p]rocessing of the Drop From the Rolls of the Air Force [action] [was] suspended pending action on Lt Col Kinney's retirement application."  Def.'s App. at 168.  A Memorandum dated September 9, 1996 (September 9, 1996 memorandum) and prepared by Brigadier General Olan G. Waldrop, Jr., an Air Force Staff Judge Advocate, documents the consideration by the Office of the Judge Advocate General specifically given to the "Application for Retirement & Officer Grade Determination [of] Lt Col Timothy G. Kinney."  *Id.* at 165–71.  The September 9, 1996 memorandum acknowledges receipt of various documents submitted on plaintiff's behalf in support of plaintiff's retirement request, including plaintiff's military performance reports, awards, decorations and supportive letters commending plaintiff for his fine military service, progress reports prepared by plaintiff's therapist and correspondence from plaintiff's former spouse addressing the consequences to plaintiff's family resulting from the loss of his military income.  *Id.* at 166.  Nonetheless, upon review of plaintiff's waiver request and the accompanying documentation seeking suspension of the DFR action pursuant to AFI 36–3203, Table 2.2, Rule 12, it was the view of the Judge Advocate General's Office that plaintiff failed to "clearly show how a change in retirement would serve Air Force interests."  *Id.* at 168.  In

---

11.  On August 10, 1994, this regulation superceded AFR 35–7, the effective regulation when plaintiff submitted his first retirement application in July 1994.  *See* Def.'s App. at 175.  AFI 36–3203 is the controlling regulation affecting service retirements at the time plaintiff filed his second retirement application in July 1996.

making this determination, Brigadier General Waldrop set forth in the September 9, 1996 memorandum an extensive discussion of plaintiff's challenges to the initiation of the DFR action and to the officer grade determination made in connection with the consideration of plaintiff's retirement request.[12] *Id.* at 168–70. Concluding with a recommendation that Lt. Col. Kinney be dropped from the rolls of the Air Force, the September 9, 1996 memorandum contains the alternate recommendation to retire plaintiff as a captain "if retirement is deemed to be appropriate." *Id.* at 171.

Contrary to plaintiff's assertions, the administrative record indicates that plaintiff's retirement request was considered and determined not to be in the best interest of the Air Force. Based on that determination and satisfaction of the statutory requirements for a DFR action, *see* Discussion at H.C.I. *supra,* the Air Force effected the DFR action. Upon review of the administrative record in this case and based on plaintiff's failure to show that the AFBCMR's decision was either "arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure," the court defers to the Air Force's decision to effect a DFR action rather than an administrative discharge of plaintiff from military service. *See Wyatt,* 23 Cl.Ct. at 318–19.

III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED with respect to plaintiff's constitutional claims, and plaintiff's complaint with respect to those claims shall be DISMISSED. With respect to plaintiff's remaining claims, defendant's Motion for Judgment Upon the Administrative Record is GRANTED. Plaintiff's Motion for Jud[g]ment upon the Administrative Record is DENIED. The Clerk of the Court

shall enter judgment for defendant. Each party shall bear its own costs.

IT IS SO ORDERED.

---

12. Title 10, United States Code, Section 1370(a) permits retirement at a higher grade only when the officer meets the applicable time requirements and has served satisfactorily in that higher grade. Def.'s App. at 168. Under the Air Force instruction implementing that statutory provision, AFI 36–3203, ch. 7, the Secretary of the Air Force or her designee determines whether an officer has served satisfactorily in the higher grade. *Id.*