Robert E. RANDOLPH, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1703C.

United States Court of Federal Claims.

Aug. 30, 1994.

Robert E. Randolph, pro se plaintiff.

Patricia L. Petty, Washington, DC, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, Director, and James M. Kinsella, Asst. Director, for defendant; Lt. Cmdr. Russell Shaffer, Dept. of the Navy, Alexandria, VA, of counsel.

## OPINION

ROBINSON, Judge:

This matter is before the court after remand to the Physical Evaluation Board ("PEB" or "Board"). In December 1991, plaintiff, Robert Randolph, filed a complaint in this court seeking back disability retirement pay and a correction of his military record to reflect a higher disability rating. Mr. Randolph, suffering from asthma, was permanently separated from the Navy with a 10% disability rating in November 1989.

---

1. This order was not published at the time of issuance. It will be reissued on the date of this opinion and published.

The parties filed cross-motions for summary judgment on March 31 and June 1, 1992, and oral argument was held on the motions. Prior to a ruling on the summary judgment motions, defendant filed a motion to remand the case to the Board. By Order dated August 4, 1993,[1] the court allowed defendant's motion for remand. The results were filed with the court on November 15, 1993. On March 17, 1994, plaintiff filed objections to the remand results. Defendant responded and renewed its motion for summary judgment.

After a careful review of the record, the remand results, and all the parties filings, the court finds that no further argument or briefing on this matter is necessary. For reasons that follow, defendant's motion for summary judgment is allowed, and plaintiff's motion for summary judgment is denied.

### Factual Background

The facts of this case are fully delineated in this court's August 4, 1993 Order. Only the more pertinent facts will be provided here.

On June 1, 1981, Mr. Randolph was placed on active duty with the United States Marine Corps. In October 1983, Mr. Randolph suffered an asthma and sinus attack for which he required emergency room treatment. Mr. Randolph again went to the hospital on December 28, 1983, suffering another asthma attack. As time passed, Mr. Randolph continued to suffer from asthma and his condition worsened. Mr. Randolph was treated with an aerosolized bronchodilator, oral medications and steroids.

Mr. Randolph's case was referred to the Central Physical Evaluation Board (CPEB) in June 1984. On December 3, 1984, the CPEB placed Mr. Randolph on the Temporary Disability Retirement List (TDRL) due to his asthma condition and assigned him a 30% disability rating.

Pursuant to 10 U.S.C. § 1210(a), Mr. Randolph underwent periodic medical examina-

tions.[2] Mr. Randolph's first examination was conducted on August 11 and 12, 1983, by Dr. Gilham. Following the first examination, on September 15, 1986, the CPEB recommended that Mr. Randolph be permanently retired with a 10% disability rating. Mr. Randolph challenged the CPEB finding and appeared before the PEB in Great Lakes, Illinois, requesting a 30% disability rating for his asthma and an additional 10% rating for high blood pressure. After reviewing Mr. Randolph's case, the PEB concluded that Mr. Randolph's asthmatic condition had not yet stabilized, and recommended that he be retained on the TDRL with a 30% disability rating.

Mr. Randolph was examined for a second time on June 2, 1988, and for a third time on May 31, 1989. After this third examination, the PEB recommended, on June 15, 1989, that Mr. Randolph be separated from the service with a 10% disability rating.

Mr. Randolph challenged this finding and requested retirement with a 60% disability rating for asthma, as well as additional ratings for sinusitis and hypertension. On September 13, 1989, the PEB conducted another hearing after which it denied Mr. Randolph's request, finding that Mr. Randolph's asthma had improved even though he continued to be symptomatic and require medication. In a letter dated September 28, 1989, Mr. Randolph again contested the Board's decision. In response, on November 1, 1989, the Director of the Navy Council of Personnel Boards (Director) denied Mr. Randolph's requests for increased ratings. On November 21, 1989, the Secretary of the Navy took final action and directed that Mr. Randolph be discharged with a 10% disability rating pursuant to 10 U.S.C. § 1210.

Mr. Randolph filed a petition with this court seeking a review of the PEB's decision on December 19, 1991, and requesting back disability retirement pay and a correction of the disability rating in his military record from 10% to 80%. Cross-motions for summary judgment were filed and oral argument was held. After oral argument, defendant filed a motion to remand this case to the Board. By Order dated August 4, 1993, the court remanded Mr. Randolph's case to the Board. As fully explained in its August 4, 1993 Order, the court allowed the motion for remand because, on the record presented, the court could not say that the Board's decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes or regulations. The court found the Board failed to fully explain certain aspects of its opinion.

Specifically, the court found in its August 4, 1993 Order that the Board, in finding an improvement in Mr. Randolph's condition, only compared the results of a February 1985 pulmonary test with a similar test performed in May 1989. The Board failed to consider or mention why it failed to consider other similar test results from other years. The court also noted that the Board failed to mention whether Mr. Randolph's condition had stabilized as required by statute.[3] Finally the court found that the Board failed to explain how the 10% rating assigned to Mr. Randolph relates to the Veterans Administration (VA) Guidelines Regarding Medical Conditions.

On remand the court requested that the Board specifically address the following five issues:

1. Why it chose to compare the values from the 1985 examination only, rather than those from any other year, with the 1989 examination results.

2. Its failure to consider test results from 1984, 1986, and 1988.

3. Whether Mr. Randolph's condition has stabilized.

4. Its failure to consider Dr. Gilham's 1986, 1988, and 1989, evaluations of Mr. Randolph's condition.

2. Service members on the TDRL must be given a physical examination at least once every 18 months. 10 U.S.C. § 1210(a) (1988).

3. Section 1201 of Title 10 states that "the Secretary may retire the member, with retired pay computed under section 1401 of this title if the Secretary also determines that (1) based upon accepted medical principles, the disability is of a permanent nature and *stable*." (Emphasis added).

5. Its failure to relate its findings and conclusions to the ratings contained in the VA Guidelines Regarding Medical Conditions.

The parties agreed by way of a joint status report filed September 3, 1993, that on remand, Mr. Randolph's case would be reviewed by the primary medical reviewer to the Director. The legal advisor to the Director also participated in preparing a response to the court's remand order. The results of the Navy's review of Mr. Randolph's case were filed on November 15, 1993, in a document entitled Review of Physical Evaluation Board (PEB) processing in the case of: Robert E. Randolph ISTLE, USMC (RET), (the remand results). On March 17, 1994, plaintiff filed objections to the remand to which defendant responded.

## DISCUSSION

Plaintiff contends that the remand results are insufficient, and do not adequately address the questions posed by the court in its August 4, 1993 Order. Specifically, plaintiff challenges the method by which the review was completed, arguing that the process did not comply with regulations. Plaintiff also contends that much of the remand results are conclusory in nature, not supported by the record, and not properly documented. As a result, plaintiff asks for judgment in his favor.

Defendant counters that plaintiff cannot now object to the procedures used on remand as both parties had agreed to them. Further, defendant asserts the remand results adequately address the questions raised by the court, and renews its motion for summary judgment.

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Judgment is entered on cross-motions for summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the record submitted to the court confirms the parties' contentions that no material facts are in dispute. Thus, the court finds resolution by summary judgment appropriate in this matter.

The court's review in this case is "limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes or regulations." *Kirwin v. United States,* 23 Cl.Ct. 497, 502 (1991) (quoting *Dzialo v. United States,* 5 Cl.Ct. 554, 561 (1984)); *see also Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983); *De Cicco v. United States,* 230 Ct.Cl. 224, 228–29, 677 F.2d 66, 70 (1982). To meet this standard, a plaintiff must demonstrate that "the personnel involved ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them, or that in [some] other manner they failed to discharge their designated duties." *O'Neil v. United States,* 6 Cl.Ct. 317, 319 (1984) (quoting *Stephens v. United States,* 174 Ct.Cl. 365, 373, 358 F.2d 951, 955 (1966)). This standard "does not require a reweighing of the evidence, but a determination whether the *conclusion being reviewed is supported by substantial evidence.*" *Kirwin,* 23 Cl.Ct. at 502 (quoting *Heisig,* 719 F.2d at 1157) (emphasis in original). The court recognizes, as it did in its August 4, 1993 Order, that this is a highly deferential standard of review. Yet, the court remanded this case because it could not say that the defendant had cleared this low hurdle. The court will now address whether, with the remand results, defendant can now clear that hurdle.

Plaintiff articulates many strong arguments in his objection to the remand results. For instance, plaintiff is correct in arguing that the remand results contain many conclusory statements and much legal analysis. Indeed, the remand results appear to be more of an attack on this court's August 4, 1993 Order remanding the case to the Board than a re-evaluation of Mr. Randolph's case in accordance with that order.

In its August 4, 1993 Order, the court had taken the Board to task for failing to consid-

er or mention certain evidence. As a result, the remand results open with an explanation to the court of the Navy's decision making process. The remand results describe the burgeoning number of cases review panels must consider annually and the amount of evidence involved, resulting in severe time constraints. In addition, throughout the remand results, the reviewers state indignantly that the court should not have concluded that the Board had failed to consider evidence simply because it failed to discuss the evidence in its written decision. In essence, the reviewers ask the court to operate under the basic presumption that the Board considers all relevant evidence, and if it fails to mention some evidence it is because the Board only has time in its decision to "highlight key points of consideration." The reviewers' reasoning on this point is faulty. If the Board fails to mention evidence, the court has no way to determine whether that evidence was considered at all and thereby determine if the Board's decision was arbitrary or capricious or unsupported by substantial evidence. If the court were to assume the Board considers all evidence regardless of whether it mentions it, the court as a practical matter could only affirm the Board's decision, thus rendering what limited review the court is empowered to exercise almost meaningless. Moreover, it would be quite simple and require very little additional time for a Board that considers certain evidence to mention that it has considered it and what affect it had. In this way the Board can provide a record for the court to review and avoid having cases remanded to it in the future. Defendant is warned that this court will continue to remand cases where it can not determine whether relevant evidence has been considered. Thus, in spite of its caseload, the Board should issue its decisions with cogent and articulate reasoning.

As to the sufficiency of the remand results, however, along with conclusory remarks and legal analysis, the court finds the remand results do provide facts and information which support the Board's original decision. Specifically, the remand results articulate factors considered in rating an asthmatic condition: (1) the number of bona fide attacks, (2) the degree of industrial or social impairment, and (3) the consistency and level of pulmonary function studies. The review panel looked at each of these factors in relation to Mr. Randolph's case. It found the number of attacks was reasonably within the Veterans Administration Schedule for Rating Disabilities (VASRD) for a 10% disability. The review panel looked at Mr. Randolph's ability to function in terms of work and determined that was also reasonably consistent with a 10% finding. In addition, according to the review panel, the pulmonary function tests conducted in June 1984, August 1986, June 1988, and May 1989, showing normal pulmonary function after medication are also reasonably consistent with a 10% finding.

The court cannot say these findings are arbitrary or capricious or unsupported by the evidence. Under the VASRD guidelines for asthma, a 30% rating is defined as:

> moderate; asthmatic attacks rather frequent (separated by only 10–14 day intervals) with moderate dyspnea on exertion between attacks.

VASRD § 4.97–3. Whereas a 10% rating is defined as:

> mild; paroxysms of asthmatic type breathing (high pitched expiratory wheezing and dyspnea) occurring several times a year with no clinical findings between attacks.

VASRD § 4.97–3.

The remand results summarize Mr. Randolph's case, and state that Mr. Randolph has: (1) improved in terms of frequency of attacks and overall occupational impairment; (2) exhibited some decline in initial pulmonary function to the below normal range since 1986, but increasing to the normal range with medication; (3) exhibited no other ratable complications; and (4) remained closer to "mild" than "moderate" in the VASRD guidelines. The court cannot say that these findings are not supported by the evidence or that evidence has been unreasonably construed. Mr. Randolph has only been hospitalized once since June of 1984, has had relatively little social impairment, and his pulmonary function is normal after medication. The court cannot say it is legally wrong to consider Mr. Randolph's pulmonary function after medication. At no point do the

guidelines indicate that pulmonary function must be considered only without medication. While the court acknowledges, as do the reviewers in the remand results, that Mr. Randolph requires increasing amounts of medication, the court cannot find that the increase necessitates a higher rating.

 While the court cannot say that the Board's decision is unsupported by substantial evidence, one aspect of the reviewers' reasoning on remand should be addressed. The remand results put a good deal of emphasis on the number of attacks Mr. Randolph suffered, and proffer a definition of "attacks" to which Mr. Randolph takes exception. According to the remand results an attack is "an occurrence of symptoms related to the asthmatic condition, sufficient to warrant an immediate visit to an emergency room, or hospital admission." As Mr. Randolph points out, this definition is highly favorable to defendant. Moreover, defendant has provided no support for this definition except to say that this definition can be used for "rating purposes." The court agrees with plaintiff in that it can find no reason why this must be the definition of "attack." However, plaintiff offers no alternative definition of attack except to define asthma as "a narrowing of the airways due to spasm of bronchial smooth muscle, swelling and inflammation in the bronchial walls" citing a medical textbook. Presumably, plaintiff is arguing that a spasm constitutes an attack.

The court finds nothing in the record indicating how the VA Guidelines define "attacks." The court cannot say that defendant's definition, while unsupported, is wrong as a matter of law. Moreover, even looking at the record using plaintiff's definition of attack, the court cannot say that the substantial evidence does not support the Board's decision, or that the evidence has been unreasonably construed. Other evidence, such as plaintiff's pulmonary function and ability to work also support the Board's decision.

The remand results also addressed each of the questions posed by the court in its August 4, 1993 Order. First, as to the original board only comparing the 1989 test results with the 1985 results, the remand results point out that the 1986 and 1988 results are consistent with the ultimate findings. The pulmonary tests from those years all indicate Mr. Randolph's pulmonary function is normal after medication.

Second, regarding its failure to consider test results from 1984, 1986, and 1989, the remand results again assert that those tests are consistent with the ultimate findings.

The third question posed by the court concerned whether Mr. Randolph's condition had stabilized. The review panel responded that, while larger doses of medication have been required, the pulmonary tests show that Mr. Randolph's condition has stabilized. According to the panel, Mr. Randolph has been virtually attack free since 1984. After considering all the factors mentioned above, the panel concluded that during the time Mr. Randolph was on the TDRL list his condition did not change very much.

Fourth, in regard to the Board's failure to consider Dr. Gilham's 1986, 1988, and 1989, evaluations, the remand results again assert that these results are consistent with the Board's ultimate finding. After Mr. Randolph's 1986, examination, the CPEB initially recommended that plaintiff be discharged with a 10% rating. On reconsideration, giving the plaintiff the benefit of doubt, Mr. Randolph was retained on the TDRL at a 30% rating. Although plaintiff's case was not reviewed subsequent to the June 1988 examination, during that examination, Dr. Gilham did observe that Mr. Randolph's asthma remained relatively well controlled. After the 1989 examination, the CPEB recommended that Mr. Randolph be discharged with a 10% rating. Thus, the examination results are consistent with and support the Board's finding.

Finally, the remand results address the question of the Board's failure to relate findings and conclusions to the ratings contained in the VA Guidelines Regarding Medical Conditions. According to the review panel, the critical factors (the frequency of attacks, degree of social impairment, and pulmonary function) all correlate to a 10% finding within the VA Guidelines.

In view of the facts presented in the remand results, the court cannot say the Board's decision was arbitrary or capricious or that it was not supported by substantial evidence. It is not the court's job to reweigh the evidence and assign a disability rating to Mr. Randolph. The Board drew reasonable conclusions from the facts before it and their decision is supported by the evidence. In sum, while the court is not entirely satisfied with the tone and construct of the remand results, and while it may have construed the evidence to support a higher rating were it conducting a *de novo* review, it cannot say that the Board's actions were arbitrary or capricious or not supported by substantial evidence.

■ Plaintiff also objects to the method by which the review on remand was carried out. Specifically, plaintiff argues the review fails to comply with this court's August 4, 1993 Order remanding the case to the PEB, because the review was carried out by a medical and a legal advisor to the Director rather than the PEB. According to plaintiff, regulations require that the Board consist of five officers including a Navy line officer, a Marine Corps officer, and three Medical Corps officers. SECNAVINST 1850.4A § 0704(a)(1). While plaintiff recognizes that the panel which originally reviewed his case has been disbanded, he argues that a "more practical" alternative to the method used by defendant would have been to refer the case to the panel currently sitting.

Defendant counters that a full panel only consists of a single medical officer, not three as argued by plaintiff. Defendant points out that the regulation relied on by plaintiff is outdated and has been replaced with SECNAVINST 1850.4C, issued on March 8, 1990. Under SECNAVINST 1850.4C, a records review panel screens incoming disability cases and performs an initial evaluation. This record review panel is comprised of a Navy line officer, a Marine Corps officer and a Medical Corps officer. SECNAVINST 1850.4C § 5001. As a result, defendant argues plaintiff received essentially the same review from the Director's Primary Medical Advisor as he would have from a record review panel, but at a higher level in the system. In essence, defendant contends that plaintiff was afforded essentially the same review on remand as his suggested alternative. Furthermore, defendant argues, citing *Sawyer v. United States*, 930 F.2d 1577 (Fed.Cir.1991), that nothing precludes high level boards from making their own *de novo* determinations of disability.

Defendant also argues that the case may not be referred to a sitting record review panel, because under SECNAVINST 1850.4C § 4, this panel only reviews cases pertaining to active duty and a limited class of reserve and former service members. Plaintiff's case, according to defendant, fails to qualify for consideration. Finally, defendant argues that plaintiff agreed to the method used and should not now be able to challenge that method.

Defendant has failed to convince the court that the sitting Board could not have reviewed plaintiff's case had this court ordered it to do so. However, as the court also does not believe that this is the only satisfactory method of review available, the court need not decide whether it could order a sitting Board to review Mr. Randolph's case. A month after the court remanded Mr. Randolph's case to the Board, on September 3, 1993, the parties filed a joint status report signed by both parties, addressing the method for carrying out the review on remand. The report states that the issues remanded by the court have been forwarded through the Assistant Secretary of the Navy for Manpower Reserve Affairs to the Director, and that the Director's primary medical reviewer is reviewing the case and will prepare responses to the court's questions. The report also notes that the PEB is without authority to conduct a review because Mr. Randolph has been discharged. This report was signed by Mr. Randolph and he stated no objection to the procedure prescribed therein at that time.

The court finds that the procedure described in the joint status report was a good faith effort to comply with the court's order. While it is true the procedure actually used differed from that described in the joint status report in that a legal advisor assisted in the review, the method was, for the most

part, that which the parties agreed upon. And this procedure adequately met the court's and Mr. Randolph's needs on remand. Finally, the court agrees with defendant that Mr. Randolph, having agreed to the procedure used prior to the review, cannot challenge it at this late date.

As to plaintiff's requests for additional ratings due to sinusitis and hypertension, the record is devoid of evidence supporting these claims. The plaintiff has failed to point to anything in the record showing these additional ratings are warranted, and has failed in his burden of showing that defendant was arbitrary or capricious or ignored competent evidence relating to the sinusitis and hypertension claims.

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is allowed, and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court is directed to enter judgment accordingly. No costs.