**David A. REBOSKY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–766C.

United States Court of Federal Claims.

March 4, 2004.

Gary R. Myers, Weare, NH, for plaintiff.

Michael O'Connell, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General, and Director David M. Cohen, for defendant. Major Susan Burger, U.S. Army Litigation Division, of counsel.

## OPINION

FIRESTONE, Judge.

This military pay case comes before the court on the parties' cross-motions for judgment upon the administrative record pursuant to Rule 56.1 of the Rules of the United States Court of Federal Claims ("RCFC"). The plaintiff is a former officer in the United States Army (the "Army" or "government") who was involuntarily separated with an Honorable Discharge upon recommendation from an administrative Board of Inquiry (the "Board"). The plaintiff argues that his discharge was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence, and therefore seeks reinstatement to active duty, expungement of his separation from his military record, and back pay. The government responds that the decision to discharge the plaintiff from the Army should be affirmed because the decision was not arbitrary, capricious, contrary to law or regulation, and is supported by substantial evidence. For the reasons stated below, the court **DENIES** the plaintiff's September 24, 2003 cross-motion for judgment upon the administrative record and **GRANTS** the government's July 29, 2003 cross-motion for judgment upon the administrative record.

## BACKGROUND

The plaintiff is a former captain in the Army. He enlisted in 1987 and was a second lieutenant in 1988 when he was placed on the Temporary Disability Retirement List

("TDRL") due to injuries sustained during training. After more than two years on the TDRL, the plaintiff was returned to active duty. As an officer, the plaintiff received an Officer Evaluation Report ("OER") either after a year in an assignment or after completing a particular assignment, whichever period was shorter. In 1991 the plaintiff was sent to Korea where his duty was to maintain "the platoon in a combat ready status capable of transitioning to war quickly" and to be responsible for "the welfare, training, and tactical employment" of soldiers. OER, March 1992, Administrative Record ("AR") at 18. The OER stated that the plaintiff does "not display the level of proficiency expected of an officer of his grade and experience." *Id.* He also received a below average rating in comparison to his peers.[1] The plaintiff's rater determined that he was below center of mass; this is, in effect, a determination that he was below average. *Id.* In addition, the plaintiff was third blocked along with two other officers, while sixty-one other officers all received first or second block ratings. OER, March 1992, AR at 19. This means that the plaintiff's rater determined that the plaintiff performed more poorly than at least sixty-one out of sixty-five of his peers.

After his service in Korea ended, the plaintiff was sent to Fort Benning, Georgia during which time his duties included "assisting the Commander in advising the International Student Training Detachment staff in solving academic, administrative, and personal problems." OER, May 1993, AR at 26. During his service at Fort Benning, the plaintiff was promoted to captain. The plaintiff's OER for the period of March 6, 1992 through May 20, 1993 was favorable. The senior rater noted a "[s]uper job by a mature, competent, and professional officer." OER, May 1993, AR at 27.

Thereafter, the plaintiff attended the Infantry Officer Advanced Course 5–93 from May 21, 1993 through April 2, 1994. The plaintiff was next assigned to the position of instructor at the Army Chaplain Center and School at Fort Monmouth, New Jersey ("Chaplain School"), where his duties included teaching "all tactical common core subjects and general soldier proficiency skills" as well as "planning, coordinating, and conducting ... field training exercises." OER, October 1994, AR at 28. The plaintiff's OER for the eight month period from May 2, 1994 through October 10, 1994 was not positive. The initial rater stated that the plaintiff "[d]oes not display the initiative or discipline required to lead troops." *Id.* The senior rater concurred, stating that "Captain Rebosky's duty performance consistently fluctuated between unsatisfactory and marginal. ... I can not imagine him commanding soldiers." OER, October 1994, AR at 29.

Following his job as an instructor in Fort Monmouth, the plaintiff served in Haiti during which time he was responsible for the "creation and sustainment of a functional operations center" during a military operation there. OER, January 1995, AR at 32. His OER for the period that he was in Haiti, between October 22, 1994 and January 27, 1995, was favorable. He was identified by his initial rater as "[c]learly a top performer with unlimited potential." OER, January 1995, AR at 33. The senior rater concurred and stated that "Captain Dave Rebosky's performance as J3 Battle Captain has been absolutely superb!" *Id.*

Finally, the plaintiff was returned to Fort Monmouth as a Supply Officer, where his duties included the operation of the Fort's supply system. The OER for the period between January 28, 1995 and June 29, 1995 stated that "CPT. Rebosky has performed to standard." OER, June 1995, AR at 35. The senior rater stated that "CPT Rebosky provided expertise in supply and company administration. This expertise in training greatly supported our headquarters company annual pistol and rifle qualification training. ... Send this officer to CAS3 and assign

---

1. Each OER contains a center of mass rating and a block rating, both of which indicate how an officer compares with his peers. A center of mass rating is equivalent to a determination that an officer is within the range of average as compared with his peers. A determination that an officer is below center of mass is, in effect, a determination that an officer is below average. A block rating, in which lower numbers denote a higher rating, indicates how an officer compares to his peers who were rated by the same rater. A third block rating is normally below average.

to troops." *Id.* He was then given a "third block" rating. *Id.*

The plaintiff had the opportunity to appeal, and in some instances did appeal, these OERs. A request to reconsider an officer's OERs is authorized only if the officer has new evidence to present to the Army. Memorandum from Larsen, Chief, Appeals and Corrections Branch, Department of the Army to Rebosky of 11/5/93, AR at 25. Since the plaintiff did not present any new evidence to the Army when appealing, all of his appeals were denied. *Id.*

Soon after the plaintiff received his last OER in 1995, the Army initiated elimination proceedings against him. In accordance with the administrative procedures available to him, the plaintiff attempted to rebut the initiation of the proceeding to eliminate him from the Army. In his letter to the Commander, U.S. Total Army Personnel Command, the plaintiff presented, in essence, the same arguments that he has presented to the court. Letter from Rebosky to Commander, U.S. Total Army Personnel Command of 12/2/96, AR at 38. In particular, the plaintiff argued that the OER for the period ending March 1992 was not indicative of his skill level because he was rated after a long period of inactivity due to injury. In any event, the plaintiff argued that the negative aspects of this OER could not be properly considered since the plaintiff was promoted to captain despite the OER's comments. The plaintiff next contended that his OERs for the periods ending October 1994 and June 1995 were not valid because he was rated by chaplains rather than by line officers. Finally, the plaintiff argued that his negative OERs were retaliatory, both for personality conflicts that he had with superiors and for reporting misconduct to the Inspector General's office. In response to his rebuttal, the Army referred his case to the Board, which was convened on June 9, 1997. AR at 42.

The Board convened to determine whether the plaintiff should be separated from the Army. In accordance with Army Regulation 600–8–24, ¶ 4–2(a), the Board was charged with evaluating whether the plaintiff had performed at a "substandard" level, which is defined to mean: either (1) "[a] downward trend in overall performance resulting in an unacceptable record of efficiency, or a consistent record of mediocre service;" or (2) failure to "keep pace or to progress with contemporaries, as demonstrated by a low record of efficiency when compared with other officers." Army Regulation 600–8–24, ¶ 4–2(a) (2003) ("Reg.4–2(a)").[2]

In support of its case, the government presented the Board with evidence of the plaintiff's inefficiency and failure to keep pace with his peers. A portion of this evidence consisted of the plaintiff's OERs for the periods ending March 1992, October 1994, and June 1995. In addition, the Board heard the testimony from witnesses called both by the plaintiff and the government. These witnesses included the plaintiff's peers and officers who had rated the plaintiff's performance. The plaintiff was represented by counsel before the Board. He was able to present his own witnesses to the Board and cross-examine the government's witnesses.

At the hearing, the Board heard testimony from Lieutenant Colonel Nichols concerning a field training exercise in which Lieutenant Colonel Nichols stated that the plaintiff had led students onto an artillery range where live ammunition was being fired overhead. AR at 54. This testimony was elicited during the plaintiff's attorney's cross-examination of Lieutenant Colonel Nichols. It was then further discussed during the redirect examination of Lieutenant Colonel Nichols. In response to this testimony, the plaintiff testified that he had not put anyone in harm's way. He did not, however, call any other witnesses to support his contention.

---

**2.** Reg. 4–2(a) reads as follows: "a. Substandard performance of duty. (1) A downward trend in overall performance resulting in an unacceptable record of efficiency, or a consistent record of mediocre service. (2) Failure to keep pace or to progress with contemporaries, as demonstrated by a low record of efficiency when compared with other officers of the same grade and competitive category. An officer who is identified ... as 'not fully qualified' for promotion will be recommended for elimination under this paragraph as provided for by the Secretary of the Army."

The plaintiff also alleges that his superior at the Chaplain School, Mr. Blatt, asked him to illegally ship the School's equipment. AR at 66–67. The plaintiff claims that after he reported this misconduct to the Inspector General's office, he became a pariah in the eyes of the chaplains. *Id.* The plaintiff attributes his negative OERs while at the Chaplain School to the fact that he reported this misconduct. *Id.* The plaintiff has presented evidence that, in fact, the Chaplain School did improperly give Chaplain School equipment to non-governmental entities. Letter from Beckwith, Inspector General to Piper of 7/19/96, AR at 73. However, the plaintiff did not introduce any evidence connecting himself with these events. The letter that the plaintiff presented did not mention the plaintiff's involvement with the illegal shipment of equipment from the Chaplain School. There is no evidence that the plaintiff's rater, Lieutenant Colonel Nichols, even knew that the plaintiff allegedly reported misconduct to the Inspector General's office. Lieutenant Colonel Nichols testified that, when rating the plaintiff, he did not know anything about the plaintiff's complaint. AR at 54. Finally, there is no evidence that, even if Lieutenant Colonel Nichols did know about the complaint, that this complaint influenced his review of the plaintiff's performance.

After hearing all of this evidence, the Board found that "there has been a significant downward trend in [the plaintiff's] overall performance resulting in an unacceptable record of efficiency. We further find that [the plaintiff's] records indicate a failure to keep pace with the [plaintiff's] contemporaries as demonstrated by a low record of efficiency when compared with other officers of the same grade and competitive category." AR at 27. The Board then recommended that the plaintiff be honorably discharged from the Army. On November 10, 1997, the Deputy Assistant Secretary of the Army responsible for Army Review Boards approved the Board's recommendation and discharged the plaintiff.

Pursuant to 10 U.S.C. § 1552, the plaintiff, again represented by counsel, petitioned the Army Board for Correction of Military Records ("ABCMR"), requesting reinstatement to active duty with back pay. The ABCMR reviewed the testimony taken by the Board and additional evidence presented by the plaintiff, including a declaration from Harold L. Durham, Range Safety Officer, Fort Dix. AR at 78. Durham's declaration explained that "no artillery rounds have ever had a trajectory flight" over the area in which the plaintiff allegedly subjected some of his students to possible artillery fire. AR at 78.

The ABCMR issued a Memorandum of Consideration on May 24, 2000 ("ABCMR Memorandum"), in which it concluded that the Board neither erred nor acted unjustly. ABCMR Memorandum, AR at 2–8. The ABCMR first addressed the plaintiff's claim that his negative OER for the time period following his service in Korea resulted from the fact that the plaintiff did not have time to properly retrain before he returned to active duty after two years on the TDRL. The ABCMR concluded that the plaintiff should have been able to retrain himself during the six month period between his return to active duty and his first exercise in Korea. ABCMR Memorandum, AR at 7. The ABCMR further concluded that the Board did not err in considering this OER after the plaintiff was promoted to captain. *Id.* The ABCMR explained that the selection board did not have this negative OER before it. The ABCMR further concluded that the plaintiff's complaint that he was rated by chaplains instead of line officers was immaterial because the plaintiff did not have line responsibilities when he was rated by the chaplains. *Id.* The ABCMR also noted that the plaintiff's third negative OER was prepared by an infantry officer. The ABCMR found that the plaintiff's raters had a sufficient idea about his responsibilities to perform a proper rating. The ABCMR concluded that his negative OERs were unrelated to the allegedly improper conduct that had been reported to the Inspector General's office. The ABCMR explained that the Inspector General's letter cited by the plaintiff does not mention the plaintiff and does not mention any of his raters. *Id.* The ABCMR mentions neither Lieutenant Colonel Nichols' testimo-

ny nor the Durham declaration regarding the alleged artillery range incident.

Finally, the ABCMR concluded that the evidence as presented to the Board indicated that the three negative OERs demonstrated "a downward trend in the applicant's overall performance resulting in an unacceptable record of efficiency." ABCMR Memorandum, AR at 7. As such, the ABCMR denied the plaintiff's request for correction of his military record.

In his complaint before this court, the plaintiff contends that the ABCMR's reliance on the negative OERs to separate him from the Army is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. After briefing on the parties' cross-motions for judgment upon the administrative record, oral argument was heard on February 24, 2004.

## DISCUSSION

### A. Jurisdiction

Pursuant to the Tucker Act, this court has jurisdiction over claims "against the United States founded either upon ... any regulation of an executive department ... or for liquidated or unliquidated damages." 28 U.S.C. § 1491(a)(1) (2003). "[T]he court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position ... and correction of applicable records." 28 U.S.C. § 1491(a)(2) (2003); *Sargisson v. United States,* 913 F.2d 918, 920 n. 2 (Fed.Cir.1990). While employed by the United States Army, the plaintiff was entitled to his pay as "a member of a uniformed service who is on active duty." 37 U.S.C. § 204(a)(1) (2003). When a member of the armed services is involuntarily separated from the Army, the government's obligation to continue to pay him is extinguished only if the separation is proper. *Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995). If the separation is improper, the government is liable to him for back pay for the salary to which he was rightfully entitled. *Id.* In the present case, the plaintiff claims that he was improperly separated from the Army and seeks reinstatement and back pay. Because he seeks back pay based on an alleged monetary liability of the United States, he has stated a claim within the jurisdiction of this court. 28 U.S.C. § 1491(a)(1); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Adkins,* 68 F.3d at 1321. Because he seeks correction of his military record and reinstatement in the Army, he has requested a remedy which this court is authorized to give. 28 U.S.C. § 1491(a)(2); *Adkins,* 68 F.3d at 1321; *Lynn v. United States,* 58 Fed.Cl. 797, 800 (2003).

### B. Standard of Review

The administrative decision to discharge a military officer is accorded great deference by this court. *Doe v. United States,* 132 F.3d 1430, 1433–34 (Fed.Cir. 1997). While such an administrative decision is not beyond judicial review, this court reviews military personnel decisions under the "strong, but rebuttable, presumption that administrators of the military ... discharge their duties correctly, lawfully, and in good faith." *Id.* at 1434.

When reviewing the decision of the ABCMR in military pay cases on cross-motions for judgment upon the administrative record pursuant to RCFC 56.1, this court's "review is necessarily limited to the record before the [ABCMR] as informed by the parties' Statements and Counter–Statements of Facts." *Pence v. United States,* 52 Fed. Cl. 643, 645 (2002). However, an RCFC 56.1 motion for judgment upon the administrative record should not be confused with an RCFC 56 motion for summary judgment. When ruling on a motion for summary judgment, this court must weigh the facts presented to it by the parties to determine whether there is any "genuine issue as to any material fact" that would preclude summary judgment. RCFC 56. When ruling on a motion for judgment upon the administrative record, however, the inquiry is different. In such a case, the court does not re-weigh the facts as found by the administrative body. *Pence,* 52 Fed.Cl. at 645. Rather, the court is bound by the correction board decision unless the plaintiff "can demonstrate by cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously,

contrary to law, or that its determination was unsupported by substantial evidence." *Dodson v. United States,* 988 F.2d 1199, 1204–05 (Fed.Cir.1993) (internal citations omitted). When making this determination, the "court will not substitute its judgment for that of the correction board." *Harris v. United States,* 14 Cl.Ct. 84, 89 (1987). Where the court finds that "reasonable minds might reach differing conclusions, the fact that this court would have reached a different conclusion than the one the agency reached is not sufficient for this court to overturn the administrative action." *Harris,* 14 Cl.Ct. at 90; *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 814 (1979). Consequently, when there is evidence both supporting the agency decision and evidence supporting the plaintiff's position, this court must defer to the agency. *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983) (holding that "the standard of review does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." [3]) (emphasis in original).

### C. The ABCMR Did Not Err in Failing to Specifically Address the Artillery Range Incident in its Memorandum Decision

 One of the plaintiff's core complaints is his contention that the ABCMR may have given improper weight to Lieutenant Colonel Nichols' testimony regarding the artillery range incident. The plaintiff is concerned that the ABCMR would have had a negative view of his performance if it believed that he had endangered others by leading them onto an active artillery range. The plaintiff argues that, because the ABCMR did not address the artillery range incident in its Memorandum, the court has no way of knowing if the ABCMR gave improper consideration to the incident. The plaintiff asserts that the failure of the ABCMR to address the incident requires the court to remand the case to the ABCMR.

The court has found only one instance in which this court has remanded a case to an administrative board for failing to discuss specific evidence. In *Randolph v. United States,* 31 Fed.Cl. 787 (1994), this court noted, in dictum, in the context of a disability determination, that if the board "fails to mention evidence, the court has no way to determine whether that evidence was considered at all and thereby determine if the Board's decision was arbitrary or capricious or unsupported by substantial evidence." *Id.* at 791. In that case the court reviewed, for substantial evidence, the findings of a military physical evaluation board for a second time; the first time that the court reviewed the findings of that board it remanded the case to the board for failure to discuss evidence in its written decision. *Id.* The court concluded that it could not find a basis for holding that the board's decision was supported by substantial evidence because the board did not discuss the evidence on which it based its decision. *Id.* The court, therefore, remanded the case to the board to provide explanations of the findings on which it based its decision. *Id.*

The ABCMR's decision in the present case does not suffer from the same defects as the board decision in *Randolph.* In the present case, the ABCMR presented a lengthy discussion of the bases of its decision. As discussed in detail below, the ABCMR reviewed the Board's findings, examined both the plaintiff's OERs and testimony from the plaintiff, his peers, and his superiors and then, citing specific examples of the plaintiff's performance record, concluded that the plaintiff in fact was experiencing a downward trend in overall performance resulting in an unacceptable record of efficiency. ABCMR Memorandum, AR at 7. The ABCMR Memorandum also discusses in detail the primary objections the plaintiff had raised with regard to the initial Board decision. Thus, in contrast with the remanded board decision at issue in *Randolph,* the ABCMR decision in the present case provides a full explanation of its reasoning.

---

**3.** As noted in *Heisig,* this standard is "broadly referred to as the 'substantial evidence' rule, perhaps because … the element 'substantial evidence' is least (and perhaps never) omitted" from the statement of the standard. *Heisig,* 719 F.2d at 1156.

■ The court agrees that the ABCMR has a duty to consider all of the evidence. However, it does not necessarily follow that the ABCMR must discuss every piece of evidence presented in its decision. As the Seventh Circuit stated in *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995) in the context of a social security disability case, "an [Administrative Law Judge] need not provide a complete written evaluation of every piece of testimony and evidence." *Id.* In addition, as U.S. Court of Appeals for the District of Columbia stated, while an agency has a duty to consider all evidence, "[i]t does not necessarily follow ... that the failure to mention certain evidence means that it was not considered." *Lorion v. U.S. Nuclear Regulatory Commission*, 785 F.2d 1038, 1042 (D.C.Cir.1986). In the present case, the ABCMR's failure to discuss the artillery range incident suggests that the ABCMR did not find that this incident provided a basis for supporting a "substandard" finding. The plaintiff's unsupported allegation that the ABCMR incorrectly weighed evidence can not overcome the strong presumption that the ABCMR discharged its "duties correctly, lawfully, and in good faith." *Doe*, 132 F.3d at 1434. The ABCMR made it clear that it believed the OERs provided the most relevant evidence for the determination of whether it should support the Board's decision. The ultimate issue for the court, therefore, is to determine whether those OERs provide substantial evidence to support the ABCMR's decision.

## D. There is Substantial Evidence Supporting the ABCMR's Conclusion

■ Having determined that the ABCMR did not err in failing to address the artillery incident, the court now turns to the plaintiff's contention that the ABCMR's decision is not supported by substantial evidence. For the reasons discussed below, the court finds that the government has in fact provided the court with substantial evidence supporting the ABCMR's decision to separate the plaintiff from service. The plaintiff, therefore, has failed to meet his burden, which is to show clearly and convincingly that the ABCMR's decision was unsupported by substantial evidence.

The record reveals that the ABCMR relied largely on the plaintiff's three negative OERs for its conclusion that the plaintiff's overall performance suffered from a downward trend resulting in an unacceptable level of efficiency. In the OER for the period ending March 1992, the plaintiff's rater gave him a below center of mass rating, thus indicating that the plaintiff was below average in comparison with his peers. The plaintiff's OER contains the comment that he does "not display the level of proficiency expected of an officer of his grade and experience." OER, March 1992, AR at 18. In addition, the plaintiff was found not to have met the standards expected of an officer of his rank and position. He was found to lack the skills necessary to make an effective captain. OER, March 1992, AR at 19. Finally, the plaintiff was "third blocked," again indicating that he was below average as compared with the officers rated alongside him.

In his OER for the period ending October 1994, the plaintiff's ratings were again subpar. He received numerous negative comments, including the comment that he "consistently fluctuated between unsatisfactory and marginal." OER, October 1994, AR at 29. His senior rater commented that he could "not imagine him commanding soldiers." *Id.* While his rater determined that the plaintiff generally met his requirements, the plaintiff received the only fourth block rating that the rater gave during that round of ratings. While the rater only blocked one other officer during that time period, again, the plaintiff was below average.

In the final OER relied upon, for the period ending June 1995, the plaintiff again received the lowest rating out of the officers ranked. Again, while there were only two officers ranked, the other officer was first blocked while the plaintiff received a considerably lower rating, in this case a third block rating. OER, June 1995, AR at 35. In sum, in three OERs over the course of four years, the plaintiff scored below average as compared with his peers, and regularly drew severe criticism of his skills and abilities from his superiors.

In addition to these negative OERs, the ABCMR had before it a record of testimony which was presented to the Board. The Board heard testimony from the plaintiff's peers and superiors, including those who directly supervised him. The testimony confirmed the characterization of the plaintiff found in his OERs: the plaintiff's record of service was uneven at best. While several witnesses testified that they would gladly have the plaintiff work for them again, one senior rater testified that "the applicant was transferred [from his position as instructor to a clerical position] based on his behavior and attitude" problems. ABCMR Memorandum, AR at 6. His superiors characterized him as an "ineffective leader," AR at 48, and "below average compared to the rest of the officers" rated. AR at 50. As an instructor, he "did not seem to have control over his class, nor did he know the subject matter." AR at 53. As a supply officer his superior characterized his "performance as below average." AR at 59. Given this record, the court finds that there is substantial evidence to support the ABCMR's conclusion that the plaintiff suffered from "a downward trend in ... overall performance resulting in an unacceptable record of efficiency." ABCMR Memorandum, AR at 7.

Moreover, the conclusion of this court that there is substantial evidence warranting the plaintiff's separation from the Army is consistent with several decision of this court dealing with similar situations. In *Price v. United States*, 43 Fed.Cl. 32 (1999), this court reviewed an ABCMR decision which separated an officer from the Army. *Id.* at 33. The officer in that case was generally rated at center of mass. *Id.* He even received an Army Commendation Medal at one point during his career. *Id.* Nevertheless, the court found that the Army's decision to separate the officer from service was supported by substantial evidence. *Id.* at 34. The court relied on the fact that "competition among officers ... is very keen. A report of anything less than consistently exemplary performance might have an adverse impact on the rated officer's career." *Id.* Similarly, the plaintiff in the present case received some positive comments on his performance, including an ·Army Commendation Medal.

AR at 185. Nevertheless, given the host of negative ratings and comments that the plaintiff has received, including his below center of mass ratings, the plaintiff's record can not be called consistently exemplary.

Similarly, in *Paskert v. United States*, 20 Cl.Ct. 65 (1990), this court reviewed a separation in which the officer claimed that his negative OERs were inaccurate because his superiors were biased against him, and that his negative ratings resulted from personality conflicts rather than his performance. *Id.* at 69. The officer presented third party testimony of these personality conflicts and testimony of praise from some officers with whom he had served. Finally, one of his raters testified that, had the decision been his, he would have promoted the officer. Despite this evidence, the court held that the ABCMR's decision should not be reversed. Stating that the plaintiff "must do more than merely allege that an OER seems inaccurate, incomplete, or subjective in some sense," the court relied on the fact that the ABCMR in that case considered the third party statements and found them insufficient to overturn the board of inquiry's recommendation to separate the officer. *Id.* at 72. Similarly, in the present case the plaintiff has alleged that his negative ratings and comments resulted from personality conflicts rather than his performance. The plaintiff has presented both positive testimony and ratings to the Board and the ABCMR. He even presented the Board with testimony of officers who stated that they would look forward to serving with him again. Like the ABCMR in *Paskert*, the ABCMR in the present case reviewed the plaintiff's claims, including claims of personal bias and positive comments from some of the plaintiff's superiors. Just as the *Paskert* court found that there was substantial evidence to support the ABCMR's conclusion, in light of both the positive and negative reviews that the plaintiff received, so too does this court find that the government has presented substantial evidence to support the decision of the ABCMR to discharge the plaintiff.

In sum, the plaintiff's record shows that his performance in the Army was uneven at best. He received both positive and negative

reviews from his superiors. While some of his OERs characterized him as a good officer worthy of promotion, others indicate that he failed to meet expectations. The Army's promotion process is highly competitive and highly subjective. In order for the plaintiff to prevail in this action, he would have had to show, by clear and convincing evidence, that the ABCMR lacked substantial evidence for its decision to separate him from service. Taking into account the plaintiff's entire record of service, including both his positive and negative ratings, the court holds that the government in fact has presented substantial evidence to support the ABCMR's conclusion to separate the plaintiff from service.

Finally, a review of the plaintiff's specific objections to the ABCMR decision does not alter this conclusion. As for the plaintiff's contention that he was rated poorly for reasons other than his merits, the record plainly shows that the ABCMR adequately considered this issue. The ABCMR noted that the plaintiff's rater for the period ending March 1992 testified before the Board that his evaluation was not based on alleged personality conflicts, but rather on the plaintiff's actions in the field. ABCMR Memorandum, AR at 6. *See Paskert*, 20 Cl.Ct. at 74 (holding that ABCMR decision to separate officer was supported although the officer alleged that a personality conflict tainted his ratings, in part because the rater testified that there was no personality conflict). The other raters also testified as to their reasons for rating the plaintiff poorly, including one rater who testified that the plaintiff was transferred because of the plaintiff's attitude and behavior problems.

The plaintiff's claim that the OER for the period during which he was in Korea should not be considered because he did not have an adequate time to retrain was also specifically addressed. The ABCMR concluded that there was an adequate period of time between his emergence from the TDRL and his Korea exercise to have allowed the plaintiff to retrain himself. Furthermore, the negative OER for the time the plaintiff was deployed in Korea was not the sole reason why the plaintiff was discharged. The ABCMR agreed with the Board that "one OER does

not make a trend; however it is the start of a trend." ABCMR Memorandum, AR at 7.

The ABCMR also specifically considered the plaintiff's claim that the negative ratings should not be considered because some were issued by chaplains, as opposed to line officers. The ABCMR concluded that the background of the raters was not material. First, the ABCMR noted that the plaintiff was not assigned line duties at the time that the chaplains rated him. Second, it noted that his last negative rating was from an infantry officer. This case can therefore be contrasted with *Lindsay*, in which the court held that an ABCMR decision was arbitrary and capricious because it relied on OERs which were completed by officers in violation of Army regulations. *Lindsay v. United States*, 295 F.3d 1252, 1258 (Fed.Cir.2002). By contrast, the raters in the present case were authorized to rate the plaintiff; the plaintiff would simply have preferred different raters.

Furthermore, the ABCMR adequately addressed the plaintiff's allegation that his poor ratings related to alleged misconduct that he had reported to the Inspector General's office. ABCMR Memorandum, AR at 7. The ABCMR expressly found that the Inspector General's report provided by the plaintiff mentions neither him nor his raters and so is "not evidence that his raters asked him to engage in improper conduct." *Id.*

Finally, the court rejects the plaintiff's suggestion that this court re-examine all of the OERs and re-weigh the evidence. The plaintiff's contention that his record could also support his continued service is simply irrelevant. As noted above, this court is not free to re-weigh the evidence or substitute its judgment for that of the ABCMR. *Heisig*, 719 F.2d at 1157. The court's function stops once it concludes that there was substantial evidence to support the ABCMR's decision. Here, the ABCMR did a thorough job in basing its decision on the record from the Board. It took into account both evidence supporting the Army's position and evidence presented by the plaintiff. It addressed the plaintiff's arguments reasonably and presented its conclusions clearly. The plaintiff has failed to provide the court with a basis for reversing the ABCMR's decision.

## CONCLUSION

For the foregoing reasons, the court **DE-NIES** the plaintiff's September 24, 2003 cross-motion for judgment upon the administrative record and **GRANTS** the government's July 29, 2003 cross-motion for judgment upon the administrative record. The clerk is therefore directed to enter judgment accordingly. Each party shall bear its own costs.

